99 So.2d 50

Robert E. Lee DENTMAN

v.

STATE of Alabama.

7 Div. 307.

Supreme Court of Alabama.

Dec. 12, 1957.

Rehearing Denied March 6, 1958.

Roy D. McCord and L. D. Martin, Gadsden, for appellant.

John Patterson, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

LIVINGSTON, Chief Justice.

The appellant, Robert E. Lee Dentman, was indicted by the Grand Jury of Calhoun County, Alabama, for the offense of murder in the first degree. On a plea of not guilty, trial was had and the jury returned a verdict of guilty as charged and fixed punishment at imprisonment in the penitentiary for life. The trial court sentenced the appellant accordingly, and he perfected an appeal to this court.

The following appears without conflict from the evidence on the trial of the case:

On the morning of June 20, 1955, Roy Turner, William Barnwell and Roy Lee Wilkerson, employees of the Waterworks Department of the City of Jacksonville, Alabama, went to the defendant's grocery store on "D" Street in Jacksonville, Alabama, and went around behind the defendant's store on the defendant's property and were proceeding to dig up and plug a water line belonging to the Profile Cotton Mills in Jacksonville, Alabama, which said water line furnished water to the defendant's store. When the defendant discovered the three city employees digging on his property, he asked what they were doing, and ordered them to stop and get off his property. Roy Turner informed the defendant that he would get off the property but that he would bring the police back with him, at which time the defendant asked him not to bring the police but to bring the mayor, as he wanted to discuss the matter with the mayor and see if something could be worked out. The three city employees left the defendant's premises, but returned some 15 or 20 minutes later. They were immediately preceded by the Chief of Police of Jacksonville, Mr. Dud-

ley Whiteside. Mr. Whiteside parked his automobile, a car belonging to the city, and walked over to Dentman's store, and was met at the steps thereof by the defendant. Whereupon, the Chief of Police and defendant engaged in a conversation lasting several minutes. There is some conflict in the testimony as to what was said during the conversation by the Chief of Police and the defendant. After talking for a few minutes, the defendant pulled a pistol from the bib of his overalls and shot the Chief of Police one time, which resulted in the death of the Chief of Police.

The defendant's testimony tended to show that during the conversation the Chief of Police informed the defendant that they were going to dig up and plug the water line leading into the store whether he liked it or not, whereupon the defendant stated to the Chief of Police that they were not going to dig up that water line until they put another water line into his store to furnish him a water supply. Defendant's testimony also tended to show that Mr. Whiteside grabbed the defendant by his shoulder and shook him, threatening to beat him if he interfered further. Dentman then jerked loose from Whiteside, and Whiteside immediately reached for his pistol which was strapped on his right side in a scabbard, whereupon Dentman drew a small 22 pistol from the bib of his overalls and shot Whiteside one time before Whiteside was able to complete the draw of his own weapon.

This case must be reversed for the admission of illegal testimony, or the trial court's refusal to exclude it on proper motion of defendant after it was admitted, which testimony, we think, is prejudicial.

It seems that the controversy between the defendant and the Chief of Police, Whiteside, arose out of a situation with reference to supplying defendant's store with water. It seems that defendant's store had been supplied with water from a plant or system operated by the Profile Cotton Mills of Jacksonville, Alabama, and not the city. It further appears that the city was

attempting to dig up and plug the mains of the Profile Cotton Mills and had laid a main in front of Dentman's store in order to supply water to the mill village.

The defendant testified in his own behalf. On cross-examination by the solicitor he was asked if he knew one Mr. Jim Marible, and he replied that he did not. Mr. Marible was one of the members of the City Council of Jacksonville. The defendant was then asked if he ever talked to Mr. Marible over the telephone, and he replied that he had not. This question was then propounded to the defendant:

"Q. I will ask you this. You just say no, I will ask you if at that time and place, about noon on the 19th of June, if Mr. Marible had a conversation with you in which Mr. Marible told you that he had nothing to do with it, to call Mr. Miller? A. No.

"Q. I will ask you whether in the same conversation if you demanded that the water be turned on by Monday morning at 6:00 o'clock and if it was not turned on you would see what you would do about it? A. No, sir, I did not."

In rebuttal, the state proved by Mr. Marible that he was a member of the City Council. Then the following occurred:

"Q. On June 19th of this year, about noon, did you have a telephone conversation with Mr. Robert E. Lee Dentman? A. Yes, sir.

"Q. I will ask you, Mr. Marible, in that conversation if Mr. Dentman was talking about the water line back of his store? A. Yes, sir.

"Q. I will ask you if in that same conversation when you talked to Mr. Dentman if Mr. Dentman didn't demand that the water be turned on by Monday morning at 6:00 o'clock, or by 6:00 o'clock, and if it was not turned on he would see what he could do about it? A. Yes, sir."

This purported telephone conversation was objected to and exceptions reserved to

the court's action in overruling the objections. But we will assume for the sake of the argument that the grounds assigned to support the objections were either too general or untenable.

On cross-examination, Mr. Marible was asked the following questions and gave the following replies:

"Q. And he told you he would see what he could do about it? A. Yes, sir.

"Q. Did you know Mr. Dentman? A. I didn't know him at that time, he told me his name at that time.

"Q. And the party that called you said his name was Dentman? A. Yes, sir.

"Q. And that is the only fact that you have upon which you base the fact that this defendant called you, is that right? A. That is all I have got to go by."

Motion was then made to exclude the testimony of Mr. Marible with reference to the telephone conversation, and being overruled, the defendant duly reserved an exception. One of the grounds of the motion to exclude was "You don't have any positive proof that this man ever made that call other than by the call itself."

■ Speaking generally, communications through the medium of the telephone may be shown in the same manner, and with like effect, as conversations had between individuals face to face; but the identity of the parties against whom the conversation is sought to be admitted must be established by some testimony either direct or circumstantial.

Unquestionably, the defendant was never identified as being the party who had the telephone conversation with Mr. Marible. The defendant himself denied having had the conversation, and Mr. Marible testified that all he had to go by was that the man who had the conversation with him said that he was Dentman (the defendant).

There are no other circumstances which would identify the defendant as the person who called Marible.

■ We will first dispose of a question of procedure. We will assume that the grounds of objection to the questions propounded to Marible on his direct examination concerning the telephone conversation in question were inapt or untenable. The objection that the party calling Marible was not properly identified was not made during direct examination of Marible; but we think that the attorney for the defendant could well presume that Marible knew the voice of the defendant, and knew who he was talking to when he said that he talked to Dentman, the defendant. We do not think that it was incumbent upon the defendant during the direct examination of Marible to attempt to establish that Marible knew, or did not know, the defendant's voice over the telephone, or to in any manner examine him on that point if he did not desire to ask the court's permission to do so at that time. He could well wait until the cross-examination of Marible to determine as to whether or not he knew the caller to be the defendant, Dentman. The burden was on the state to establish the identity of the person who called Marible, and not on the defendant to prove that he did not call Marible. He could, both timely and apt, move to exclude the telephone conversation when it was brought out on cross-examination that Marible didn't know who he was talking to. It was stated in Davis v. Arnold, 143 Ala. 228, 39 So. 141:

"When a witness gives testimony of his own knowledge, and upon cross-examination it develops that it was mere hearsay, it should be excluded, if the motion to exclude relates only to the hearsay evidence. The trial court, therefore, erred in overruling defendant's motion to exclude testimony of witness Van Harvey as to lines and location of the land, because he said 'Mr. Lea told me these were the lines.' "

And in the case of Brown v. Brown, 242 Ala. 630, 7 So.2d 557, it was said:

"Evidence for defendant tended to show swapping of cows was merely an exchange of one cow owned by defendant for another; that plaintiff requested the use of this little cow with her first calf, because she would require less feed, and give all the milk needed. Several witnesses for plaintiff testified in general terms to plaintiff's ownership of the cow. This was permissible. Rasco v. Jefferson, 142 Ala. 705, 38 So. 246. When it developed on cross-examination that the witness had no knowledge of the transaction, and was testifying from hearsay, the motion to exclude should have been sustained. Davis v. Arnold, 143 Ala. 228, 39 So. 141."

Likewise, in the case of Central of Georgia Ry. Co. v. Barnett, 220 Ala. 284, 124 So. 868, 869, this court said:

"On his examination in chief, the plaintiff testified without objection on the part of the defendant, that in his 'opinion the reasonable value of the rails, cross-ties, and spikes, on the 19th day of March,' the day they were removed, 'was $579.12.'

"On cross-examination, plaintiff testified: 'I got my idea as to the value of rails from the Birmingham Rail and Locomotive Company, and that is all that I know about it. I wrote a letter in which I told them exactly what was taken out, and in reply they wrote me a letter, and that is the only information, all the information I have as to the value of the property, I have no personal knowledge myself.' The further cross-examination of the witness shows that the quoted testimony related to the value of the rails, and, if defendant had limited its motion to exclude to the testimony as to the value of the rails, the motion would probably have been granted by the trial court (Davis v. Arnold, 143 Ala. 228, 39 So. 141), * * *."

And in the case of Theodore Land Co. v. Lyon, 148 Ala. 668, 41 So. 682, 683, it was said:

"This witness on his direct examination testified that Mr. Hieronymus had Mr. Anderson's land leased, 'and he gave Mr. Shaw permission to get logs off of Mr. Anderson's land in return for the logs he cut off of this land'— meaning the land in controversy. On the cross-examination of this witness it was developed that the only way he knew anything about the logs being cut off this land and about the permission that Hieronymus had given Mr. Shaw was that somebody told him so. The defendant thereupon moved the court to rule out the above testimony of the witness on the ground of its being hearsay. The court overruled the motion, and the defendant excepted. The evidence was clearly hearsay, and the defendant had availed himself of the first opportunity to have it excluded. The motion should have been sustained, and the evidence excluded, and in refusing to do so the court committed error."

In the instant case, the trial court's attention was directed to the lack of identity of the defendant as the man who had the telephone conversation with Marible, and he was given ample opportunity to then exclude the evidence, and if it were inadmissible, it should have been excluded.

Questions too numerous to mention may and do arise over the admissibility of telephone conversations. We will make no attempt here to deal in generalities, but will confine our discussion to the exact question presented by this record; neither will we deal with the exceptions to the above-stated rule. See the following authorities: Morris v. State, 25 Ala.App. 494, 149 So. 359; Vaughn v. State, 130 Ala. 18, 30 So. 669; Crosswhite v. Chattanooga Brewing Co., 10 Ala.App. 425, 65 So. 298; Kirby v. State, 16 Ala.App. 467, 79 So. 141; Kirby v. State, 17 Ala.App. 151, 82 So. 641, certiorari denied 203 Ala. 473, 83 So. 416; also

**128**

Dorchester Trust Co. v. Casey, 268 Mass. 494, 176 N.E. 178, 71 A.L.R. p. 5, and 105 A.L.R. p. 326.

In the case of Vaughn v. State, supra [130 Ala. 18, 30 So. 671], it was said:

"Dr. Copeland, a witness for defendants, testified, that about 8 or 9 o'clock, Christmas night, he was telephoned to know if he would make a call that night at 11 o'clock; that he replied, 'Yes,' and asked who it was that made the inquiry, and the person replied, 'Jared Engram'; that he did not recognize the voice, whose it was, and he was not familiar with Jared Engram's voice. The state objected to this evidence, as to the telephone message, on the ground that it was illegal, irrelevant and immaterial, and it was excluded. If material, it was certainly not admissible against the state, in the absence of proof that it was the deceased who sent the message. From aught appearing another than, and a stranger to, deceased may have sent it."

The decision was that the telephone conversation was properly excluded.

■ The rule applicable to the conversation here is stated in 22 C.J.S. Criminal Law § 644, p. 983, as follows:

"Unless otherwise objectionable, evidence of a telephone conversation is competent and admissible as substantive evidence against accused where the identity of the parties to the conversation is established either by direct evidence or by facts and circumstances, or is admitted; and conversely, such evidence is incompetent where the identity is not established. * * *"

■ In the first place, we think the testimony given by Mr. Marible as to the telephone conversation was prejudicial to the rights of the defendant. At least, it contained a veiled threat as to what the defendant would do unless his water were cut on by 6 o'clock on Monday, the 20th day of June, 1955, and we are unwilling to say that it could not possibly have affected the jury in its deliberation as to the guilt or innocence of the defendant.

The record is clear that the witness Marible did not know the defendant, Dentman, and based the assertion that it was Dentman who called him on the telephone on the sole fact that the caller said he was Dentman. The witness stated, "That is all I have got to go by."

For aught appearing, another than the defendant may have called Marible at the time in question. To hold the appellant responsible for statements made over telephone by unidentified persons would, in our judgment, open the door for fraud and imposition.

Under the authorities which we have cited, we are clear to the conclusion that the evidence of the telephone conversation was inadmissible, and the trial court committed reversible error in not excluding it on appellant's motion.

The case is due to be, and is, reversed and remanded to the trial court.

Reversed and remanded.

SIMPSON, GOODWYN and COLEMAN, JJ., concur.

LAWSON and MERRILL, JJ., dissent.

STAKELY, J., not sitting.

MERRILL, Justice (dissenting).

There is no difference of opinion between the majority and me as to the law enunciated in that opinion. The disagreement comes in the application of that law to the facts as stated in the opinion. From a reading of the record, my interpretation of the facts differs from those recited in the majority opinion, and lead me to a conclusion that the statement of the defendant related by Marible was not a veiled threat against the deceased or any agent of the city, and when all the circumstances are

considered, even if error was committed, it was not prejudicial to the rights of the defendant.

I, therefore, respectfully dissent.

LAWSON, J., concurs in the foregoing dissent.