267 So.2d 503

**Arley Edward BURTON**

**v.**

**STATE.**

**I Div. 201.**

Court of Criminal Appeals of Alabama.

Oct. 10, 1972.

Harry Seale, Mobile, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

ALMON, Judge.

Arley Edward Burton was convicted of rape and his punishment was fixed at ten years in the penitentiary. We will set out the facts necessary to understand the questions of law presented.

In the early morning hours of July 31, 1970, the complaining witness was returning home. She had been nightclubbing in Mobile with several friends. The time was estimated at 1:30 A.M. As she was driving along she noticed an automobile behind her with its lights blinking. She testified that she thought it was a couple who had been sitting with her friends at the Capri Club. She slowed down to see who it was and apparently decided it was not who she thought and proceeded on her way. This automobile continued to follow her and later as she began to make a left turn, blocked her path. A man jumped out of the automobile, which was a light colored Volkswagen, waiving a pistol and told her he was a "special agent" and ordered her to get out of her car or he would kill her. Instead, he got into her car and forced her to drive to a nearby cemetery. While riding to the cemetery he told her his name was Ed. After a scuffle, she was raped by this man. From a reading of the record there seems to be little or no doubt that she was raped. The testimony of a doctor and other evidence tend to corroborate her story. After this occurrence, the man left and she drove a short distance where she stopped a deputy sheriff's car and made complaint to him. She gave a description of the man and the car he was driving. At trial she positively identified the appellant as the man who had raped her.

Appellant was arrested between 12:20 and 12:30 A.M. the morning of August 12, 1970, by Deputy Sheriff Jack Davis. He was the same police officer to whom the

complaining witness had some ten days earlier reported the rape. Deputy Davis testified that while patroling in an area near the intersection of Three Notch Road and Carroll Plantation Road, he received a radio disptach that there was a suspicious Volkswagen in the area of 49 Plantation Road. The complaining witness lived at 49 Plantation Road. He testified that "all cars had an all point bulletin for a white Volkswagen and a man named Ed." He further testified that "there was a pick-up order to all cars concerning a light colored Volkswagen that had shot into an occupied dwelling out there." As. Deputy Davis approached the intersection of Carroll Plantation Road and Three Notch Road he saw a white Volkswagen, with its engine running and its lights off, parked in the road blocking one lane of traffic. This was approximately one block from where the rape had occurred and also near the complaining witness's home. The appellant was the driver of the Volkswagen. Deputy Davis asked him for his driver's license and at the same time, shining his flashlight into the car, saw a live round of ammunition on the right side and a spent round on the left side of the automobile. The glove compartment was open and Deputy Davis observed the butt of a pistol in the glove compartment. The appellant was then placed under arrest. The record is not clear but apparently subsequent to appellant's arrest he was identified by the complaining witness as the party who had previously raped her. No questions are raised on this appeal concerning the legality of any pre-trial confrontation.

The first claim of error arises from the testimony of the daughter of the complaining witness. For a complete understanding of the objection made we will quote from the record:

"Q. Is this the first time you have ever appeared in Court?

"A. Yes sir.

"Q. How old are you?

"A. Fourteen.

"Q. And who is your mother?

. . . . . .

"Q. She is the lady here today involved in this rape case?

"A. Yes sir.

"Q. Where do you live?

"A. 49 Carol Plantation Road.

"Q. Would I be correct in stating you live here?

"A. Yes sir.

"Q. I direct your attention to August 11, 1970, and ask whether or not you were at your home at approximately 12:00 midnight?

"A. I was.

"Q. I direct your attention to approximately five minutes to 12:00 o'clock on August 11, 1970, and ask you if you have the occasion to receive a telephone call?

"A. Yes sir.

"MR. SEALE: We object if the Court please unless it's connected up.

"THE COURT: Do you propose to connect it up?

"MR. CAMPBELL: I will connect it.

"THE COURT: Overruled.

"MR. SEALE: Except.

"A. Did you receive a telephone call that night?

"A. Yes sir.

"Q. At what time?

"A. Almost 12:00 o'clock.

"Q. Previous to this occasion of the telephone call did you know that your mother was raped?

"A. No sir.

"Q. All right. I'll ask you whether or not the person on the other side of

this conversation identified himself by name?

"MR. SEALE: We object. It would be hearsay.

"MR. CAMPBELL: We will tie it up your Honor.

"THE COURT: Overruled for the time being.

"MR. SEALE: Except.

"Q. Did someone identify himself?

"A. Yes sir.

"Q. What did he say his name was?

"A. Ed.

"Q. Now what did Ed say to you?

"MR. SEALE: We object because it isn't shown that Ed, there are thousands of Eds. It hasn't been shown that it's this Ed. It hasn't been shown that she ever heard his voice before or recognized his voice.

"THE COURT: That's true. I don't think the proper predicate has been laid for it yet.

"MR. CAMPBELL: She can testify that she heard something from Ed.

"MR. SEALE: You have to tie it up beforehand. You have to prove that it was this man, that she knew his voice.

"THE COURT: I'd better let the jury go out until we get this thing straightened out.

After the jury returned this witness testified that after receiving the telephone call she called her mother at work and that after she made the telephone call to her mother she twice noticed a white Volkswagen pass by their house.

The appellant testified that he was married and had two children and that he was at home with his wife and two children on the night of July 30, 1970, and during the early morning hours of July 31 until 5:15 A.M. when he went to work.

The appellant further testified that on the night he was arrested he had fired two pistol shots over the house of the "Carpenter boys" on Vivian Drive; that he had tried to get the Carpenters to come out of their house and they would not so he fired his pistol over their house. His testimony was to the effect that he was looking for the Carpenter boys because they had, according to his wife, drugged her at a bar and later taken advantage of her sexually. This was his explanation for being in the area where the complaining witness lived. He denied having anything to do with the rape. The appellant's wife's testimony was substantially the same as that of the appellant with regard to the appellant's being home the night of July 30 and the morning of July 31, and also with regard to her encounter with the Carpenter boys.

The general rule seems to be that telephone conversations, unless otherwise objectionable, are admissible as substantive evidence against an accused where the identity of the parties to the conversation is established, and, conversely, such evidence is inadmissible where the identity is not established. Dentman v. State, 267 Ala. 123, 99 So.2d 50; Vaughn v. State, 130 Ala. 18, 30 So. 669. Therefore, evidence of the telephone call by the unidentified caller allegedly named "Ed" was inadmissible. A further question remains, however, as to whether proper objection and motion to exclude were made. A somewhat analogous situation is found in Dentman, supra, in which the appellant was charged with murder. We quote from Dentman:

"It seems that the controversy between the defendant and the Chief of Police, Whiteside, arose out of a situation with reference to supplying defendant's store with water. It seems that defendant's store had been supplied with water from a plant or system operated by the Profile Cotton Mills of Jacksonville, Alabama, and not the city. It further appears that the city was attempting to dig up and plug the mains of the Profile Cotton

Mills and had laid a main in front of Dentman's store in order to supply water to the mill village.

"The defendant testified in his own behalf. On cross-examination by the solicitor he was asked if he knew one Mr. Jim Marible, and he replied that he did not. Mr. Marible was one of the members of the City Council of Jacksonville. The defendant was then asked if he ever talked to Mr. Marible over the telephone, and he replied that he had not. This question was then propounded to the defendant:

"'Q. I will ask you this. You just say no, I will ask you if at that time and place, about noon on the 19th of June, if Mr. Marible had a conversation with you in which Mr. Marible told you that he had nothing to do with it, to call Mr. Miller? A. No.

"'Q. I will ask you whether in the same conversation if you demanded that the water be turned on by Monday morning at 6:00 o'clock and if it was not turned on you would see what you would do about it? A. No, sir, I did not.'"

"In rebuttal, the state proved by Mr. Marible that he was a member of the City Council. Then the following occurred:

"'Q. On June 19th of this year, about noon, did you have a telephone conversation with Mr. Robert E. Lee Dentman? A. Yes, sir.

"'Q. I will ask you, Mr. Marible, in that conversation if Mr. Dentman was talking about the water line back of his store? A. Yes, sir.

"'Q. I will ask you if in that same conversation when you talked to Mr. Dentman if Mr. Dentman didn't demand that the water be turned on by Monday morning at 6:00 o'clock, or by 6:00 o'clock, and if it was not turned on he would see what he could do about it? A. Yes, sir.'

"This purported telephone conversation was objected to and exceptions reserved to the court's action in overruling the objections. But we will assume for the sake of the argument that the grounds assigned to support the objections were either too general or untenable.

"On cross-examination, Mr. Marible was asked the following questions and gave the following replies:

"'Q. And he told you he would see what he could do about it? A. Yes, sir.

"'Q. Did you know Mr. Dentman? A. I didn't know him at that time, he told me his name at that time.

"'Q. And the party that called you said his name was Dentman? A. Yes, sir.

"'Q. And that is the only fact that you have upon which you base the fact that this defendant called you, is that right? A. That is all I have got to go by.'

"Motion was then made to exclude the testimony of Mr. Marible with reference to the telephone conversation, and being overruled, the defendant duly reserved an exception. One of the grounds of the motion to exclude was 'You don't have any positive proof that this man ever made that call other than by the call itself.'

"Speaking generally, communications through the medium of the telephone may be shown in the same manner, and with like effect, as conversations had between individuals face to face, but the identity of the parties against whom the conversation is sought to be admitted must be established by some testimony either direct or circumstantial.

.    .    .    .    .    .

". . . The burden was on the state to establish the identity of the person who called Marible, and not on the defendant to prove that he did not call Marible.

He could, both timely and apt, move to exclude the telephone conversation when it was brought out on cross-examination that Marible didn't know who he was talking to. . . ."

The *Dentman* case was reversed because there was a motion to exclude, whereas in this case there was no motion to exclude. In this case the first objection to the telephone conversation by the defense counsel was, "We object if the court please unless it is connected up." The court replied with a question to the district attorney, "Do you propose to connect it up?" To which the district attorney replied, "I will connect it up." This was in effect admitting evidence conditionally and was proper in view of the State's assurance that it would be connected up. Then when it became apparent to the trial judge that the witness could not identify the voice of the caller he ruled that the proper predicate had not been laid for the admission of the telephone conversation. The trial judge was correct in this ruling. It was then incumbent upon defense counsel to move to exclude the evidence.

The rule as we understand it with regard to conditionally admitted evidence is stated in Cook v. Latimer, 279 Ala. 294, 184 So. 2d 807, as follows:

"Obviously, the evidence was admitted conditionally, that is, subject to its relevancy being shown by subsequent evidence. However, no such showing was made; nor did appellant either renew his objection to the evidence or move to exclude it because its relevancy was never shown. Accordingly, the question as to the competency of the evidence cannot be raised on this appeal. See: Lyons v. Taylor, 231 Ala. 600, 604, 166 So. 15; Alabama Power Co. v. Allen, 218 Ala. 416, 419, 118 So. 662; Maddox v. Dunklin, 163 Ala. 278, 281–282, 50 So. 277; Anno.: 'Necessity and sufficiency of renewal of objection to, or offer of, evidence admitted or excluded conditionally,' 88 A.L.R.2d 12, 23 (§ II). In Ala-

bama Power Co. v. Allen, supra, approval was given to the following statement of the applicable principle:

" 'The rule is well established that, where the trial court admits evidence over objection, on the promise of counsel that he will later make it competent by the introduction of connecting evidence, or where he temporarily sustains or overrules an objection to the introduction of evidence because of his inability to decide the question of its competency at that time, and no further ruling is requested or made, the question as to the competency of the evidence cannot be raised on appeal.'. 48 A.L.R. Note, p. 488.' "

Appellant further contends that there was no probable cause for his arrest and that evidence of the search should not have been admitted. The physical evidence was not introduced, only the statements of the arresting officer. Deputy Davis was the police officer to whom the complaining witness related the facts of her rape and knew firsthand the description of the assailant and the automobile in which he was driving. Additionally, he was answering a complaint that someone in a light colored Volkswagen had shot into an occupied dwelling. With this knowledge he proceeded to the area and observed a white Volkswagen with its engine running and lights off parked in the road blocking one lane of traffic. This was in the area where the rape had occurred and also where the complaining witness lived. When he approached the parked vehicle he observed the butt of a pistol protruding from an open glove compartment. It would have indeed been poor police work if the officer had done anything other than what he did. We conclude that there was ample probable cause to arrest the appellant. The pistol was well within the "plain view" doctrine announced in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067.

No specific objection was made to the evidence of the appellant having a pistol

in his possession on the ground that this was evidence of other crimes committed and therefore prejudicial. Therefore, nothing is presented for review on that particular point. Moreover, this evidence tended to corroborate appellant's version as to why he was in the neighborhood at that time.

The final claim of error is directed to a question asked the appellant's wife on cross-examination. She had previously on direct examination testified that she had been raped by the "Carpenter boys." She was asked over objection if she had ever been raped more than once, to which she replied, "Yes." We consider this improper cross-examination under the circumstances. However, we are of the opinion that, if error, it was harmless, particularly in view of the fact that appellant received the minimum sentence and that he was positively identified by the complaining witness.

Finding no reversible error in the record, the judgment appealed from is due to be

Affirmed.

All the Judges concur.