277 So.2d 395

**Milton MITCHELL, alias**

v.

**STATE.**

**1 Div. 288.**

Court of Criminal Appeals of Alabama.

Jan. 23, 1973.

Rehearing Denied Feb. 20, 1973.

Delano J. Palughi and Peter J. Pal-
ughi, Mobile, for appellant.

William J. Baxley, Atty. Gen., and John
A. Yung, IV, Asst. Atty. Gen., for the
State.

HARRIS, Judge.

The appellant was convicted of second
degree murder and sentenced to forty (40)
years imprisonment in the penitentiary.
This appeal comes to this Court *in forma
pauperis* and the appellant's counsel on ap-
peal represented him at the trial below.

Appellant was arrested on July 31, 1971,
and charged with first degree murder in
the pistol slaying of Chief of Police Mark
Raleigh Clark of Millry, Alabama. Chief
Clark was investigating a disturbance at
the Roscoe Pool Hall in Millry on July 23,
1971, when the shooting occurred. Clark
was accompanied by an auxiliary police-
man, David Turner, at the time but he re-
mained outside the hall while Chief Clark
sought to question its owners about the
presence of illegal beer. At the trial, wit-
nesses testified that a scuffle ensued short-
ly after officer Clark went inside the
building and that two shots were fired.
Clark later died of a single bullet wound in
the head which was determined by a state

toxicologist to have been fired from a .32 caliber pistol. Although the death bullet was ascertained to be .32 caliber, the death weapon was never found.

The crux of the State's case against the appellant was based on the testimony of William Wimberly, an eyewitness to the shooting. According to this witness, the appellant shot Chief Clark as he scuffled with two other persons near the front door of the pool hall. The witness testified that he was wounded by the first shot (which was later determined to have been fired from the pistol of Chief Clark) during the struggle for Clark's weapon. The witness testified that he saw the appellant, Buck Mitchell, fire the second shot and that after it was fired, Clark fell to the floor. The State also produced a witness, Leon Roscoe, who testified that shortly after the shooting, the appellant confided in him and said, "I think I shot him in the head."

During the course of the trial, the state introduced into evidence two parts of a bullet which were recovered from officer Clark's head. Dr. Nelson E. Grubbs, State Toxicologist, testified that he removed a bullet fragment from Clark's head during the course of his autopsy. He further testified that he compared the fragment he found with a fragment recovered from the deceased's head by the attending physician, Dr. Henry C. Mostellar, at Mobile General Hospital and the two fragments were a definite match. The State also introduced the steel jacket of a bullet which had been recovered at the scene of the shooting by Captain Raymond Brooks of the State Department of Public Safety. Dr. Grubbs testified that the markings on the steel jacket were identical with a test bullet which he had fired from a 357 magnum pistol marked "Raleigh Clark." The gun marked "Raleigh Clark" was recovered by the mayor of Millry, Robert Dearman, and others on the morning after the shooting. According to testimony, it was located a few feet to the east of the pool hall and one shot had been fired. According to Mr. Dearman, the gun was retained by Charles Norris, mayor pro

tem of Millry. It was later ascertained from the testimony of Captain Brooks that the "Clark" pistol was turned over to him by Norris and that in turn, he delivered it to State Toxicologist Grubbs.

During Dr. Grubbs' testimony concerning the bullet fragments and the six pistols, appellant's counsel made certain objections. It is essential to note the nature of these objections and the corresponding rulings and lack of rulings by the trial court. Concerning the bullet fragment removed by the attending physician, Dr. Grubbs was asked the following:

"Q. Dr. Grubbs, there is a larger jar sitting up on the witness stand there identified as State's Exhibit 1. Have you ever seen that exhibit?

"MR. PALUGHI: If it please the Court, I object. They haven't established the chain of this evidence. The last we heard the doctor had given it to someone else; some lady.

"MR. TURNER: We can't do it all at one time, if it please the Court.

"JUDGE LINDSEY: Do you expect to connect this up?

"MR. TURNER: Yes, sir.

"JUDGE LINDSEY: Mr. Palughi, I'm going to let it in with the understanding if he doesn't connect it up I will exclude it.

"MR. PALUGHI: Thank you, Judge.

"JUDGE LINDSEY: If you will make the motion to the Court."

Subsequently, Dr. Grubbs testified that it was not possible for the .32 caliber death bullet to have been fired from the pistol marked "Raleigh Clark" or from any pistol larger than a .32 caliber. Dr. Grubbs also made a ballistic test of a 357 magnum pistol which belonged to the auxiliary policeman, David Turner. The witness stated conclusively that the two fragments which comprised the death bullet could not have

been fired from this particular gun either.

Concerning the steel jacket found at the scene and the pistol marked "Raleigh Clark", the following transpired:

"Q. Let me stop you there just a minute, Dr. Grubbs. Do you have in your hand a bronze, or a steel jacket, is that correct, that was delivered to you by the same Captain Brooks that you mentioned a minute ago?

"A. Yes, sir.

"Q. All right, sir, would you give that piece of bullet and an envelope to Mrs. Womble and have her identify it as State's Exhibit 3?

"MR. PALUGHI: At this point may we again have our objection to the marking and introduction of this bit of evidence?

"JUDGE LINDSEY: He hasn't offered it into evidence. He has only marked it for identification.

"MR. PALUGHI: All right, sir.

"MR. TURNER: In regard to this steel jacket we are not going to be able to connect it up, Judge, until we have an opportunity to put Captain Brooks on.

"JUDGE LINDSEY: I understand that. It is not offered in evidence.

"Q. You said this steel jacket was delivered to you by Captain Brooks?

"A. It was.

"Q. Did you also receive a 357 magnum pistol from Captain Brooks?

"A. I did.

"MR. PALUGHI: If it please the Court we object. The questions right now are immaterial to the case.

"JUDGE LINDSEY: Do you expect to connect this up?

"MR. TURNER: Yes, sir.

"JUDGE LINDSEY: And you're not offering anything. For the time being I overrule the objection and will entertain your motion to exclude."

Again the trial judge did not specifically rule on the failure of the state to identify or "connect up" the evidence but rather withheld ruling apparently on the state's expectation to "connect it up."

The state also elicited testimony from the state toxicologist concerning four other pistols which were delivered to Dr. Grubbs by various law enforcement agencies. Included were one .22 magnum revolver, one .22 revolver, one .38 revolver, and one .32 revolver. Dr. Grubbs testified that he did not make comparative ballistic tests on the .22 caliber pistols because the .22 caliber bullets were much too small to match the .32 bullet removed from the deceased. Dr. Grubbs stated that he did test both the .38 and .32 caliber revolvers and that neither one would match the death bullet. The witness concluded his testimony on cross-examination by stating that none of the lands and grooves from the bullets of the weapons delivered to him would match the bullet which killed Chief Clark.

Following Dr. Grubbs' testimony, the state again sought to introduce the steel jacket of the bullet which was fired from the pistol marked "Raleigh Clark"; however, the defense interposed the following objection:

"MR. TURNER: In regard to State's Exhibit 3, we would like to offer it in evidence at this time subject to this steel jacket in the envelope marked State's Exhibit 3 for identification being connected up from the scene of the crime to its delivery to Dr. Grubbs.

"MR. PALUGHI: Judge, we object. They haven't shown where it came from, when it was gotten . . .

"JUDGE LINDSEY: Don't you have it marked for identification?

"MR. TURNER: Yes, sir, we have it marked for identification.

"JUDGE LINDSEY: Well, why don't you leave it marked for identification until you do connect it up.

"MR. TURNER: That will be all right with me.

"JUDGE LINDSEY: That answers your objection, Mr. Palughi.

"MR. PALUGHI: Yes, sir."

Again, the trial court failed to rule on the objection by appellant and no motion to exclude was made by appellant's counsel. Rather defense counsel seemed satisfied with marking the evidence until it was connected up.

Concerning the 357 magnum pistol marked "Raleigh Clark", the defense objected to testimony concerning it as follows:

"Q. All right, sir. Where did you get that—do you recall where you got that particular gun?

"A. I got it from Mr. Charles Norris. I believe he is the Mayor Pro tem of Millry.

"MR. PALUGHI: I assume the State can connect this gun with Mr. Norris.

"JUDGE LINDSEY: How is that?

"MR. PALUGHI: The last we heard about this gun it was turned over by the mayor to Mr. Norris. Mr. Norris has not been on the stand yet to connect the chain. I would like to reserve an objection.

"JUDGE LINDSEY: Well, he hasn't offered it in evidence."

And finally, at the conclusion of the state's case, the counsel for defense made the following motion:

"MR. PALUGHI: Without resting the defense moves to exclude the state's evidence.

"JUDGE LINDSEY: You are resting?

"MR. PALUGHI: Without resting, sir.

"JUDGE LINDSEY: Oh, without resting. Your motion will be denied."

Thus, the appellant's counsel attempted to exclude *all* the state's evidence with one broad motion to exclude. Although the state failed to "connect" the pistols and fragments, the counsel for appellant failed to point out in what particular manner the State failed.

■ The general rule as to conditionally admitted evidence was cited with approval in Alabama Power Company v. Allen, 218 Ala. 416, 118 So. 662, and is as follows:

" 'The rule is well established that, where the trial court admits evidence over objection, on the promise of counsel that he will later make it competent by the introduction of connecting evidence, or where he temporarily sustains or overrules an objection to the introduction of evidence because of his inability to decide the question of its competency at that time, and no further ruling is requested or made, the question as to the competency of the evidence cannot be raised on appeal.' 48 A.L.R. Note, p. 488."

■ Our Supreme Court had the opportunity to consider conditionally admitted evidence in Cook v. Latimer, 279 Ala. 294, 184 So.2d 807. In *Cook,* the appellant did not renew his objection to the evidence nor did he move to exclude it because of the lack of relevancy. The court held, *inter alia,* that failure to renew his motion precluded it from considering the competency of the evidence on appeal. In Dentman v. State, 267 Ala. 123, 99 So.2d 50, appellant was charged with murder and the Supreme Court was again considering the introduction of possibly prejudicial evidence. There, the prosecution had introduced a certain telephone conversation and the defense made a motion to exclude testimony concerning the call. The defense motion

was overruled by the trial court and the defendant's counsel duly reserved an objection. However, as the court noted in its opinion, one of defendant's grounds to exclude was that there was no positive proof that the defendant actually made the call other than the call itself. The court went on to hold that the trial court erred in not granting appellant's motion and reversed. However, in the instant case, the appellant made no specific motion to exclude the bullet fragments or the pistols on the state's failure to "connect up" the evidence. It would seem to be incumbent upon the defense counsel to make his motion in such form that the trial judge could discern what of the state's evidence the appellant seeks to exclude. Recently, in Burton v. State, 48 Ala.App. 713, 267 So.2d 503, this court held that absent a motion to exclude conditionally admitted evidence, there was no error presented for review. In the instant case, the appellant's counsel made a broad, general motion to exclude the state's evidence. Without particularities as to what evidence he wanted excluded, there was not presented to the trial court with sufficient certainty a motion which can be reviewed by this court. We do not sanction the procedure pursued by the state in this case in referring to six pistols *with knowledge that the death weapon had not been found*. The six pistols constituted a "courtroom arsenal" and had no place in the trial of this case. Appellant's motion to exclude the state's evidence was too broad as it carried with it eye-witness testimony that the appellant fired the fatal shot as well as an inculpatory statement allegedly made by appellant to Leon Roscoe, viz., "I think I shot him in the head." Had the motion to exclude been limited to all testimony relating to all pistols but the Clark pistol, it would have been reversible error to have overruled the motion.

■ Prior to entering upon the trial of this case, appellant filed a written motion to require the state, through the District Attorney and the Sheriff, to produce for inspection by his attorney copies of all notes, affidavits, statements, and reports made and collected by them in the course of their investigation of this homicide. He specifically sought copies of any statement made by appellant and other witnesses and particularly a copy of the F.B.I. report. The testimony developed that the F.B.I. report did not contain any statement, written or by oral reference, made by appellant. The F.B.I. report was essentially a summary in narrative form of interviews with various witnesses. There were no signed statements by any witness interviewed by the F.B.I., nor was there a verification as to accuracy of the summary made by the investigating officers. The motion to produce was denied by the trial court. There was no error in denying the motion to produce. Smith v. State, 282 Ala. 268, 210 So.2d 826; Sanders v. State, 278 Ala. 453, 179 So.2d 35; Strange v. State, 43 Ala. App. 599, 197 So.2d 437; Mabry v. State, 40 Ala.App. 129, 110 So.2d 250; Vaughn v. State, 25 Ala.App. 204, 143 So. 211.

■ Appellant also filed a motion to strike the jury venire facias on the ground that women and Negroes were systematically excluded from the jury rolls. The probate judge and circuit clerk of Washington County were called as witnesses for appellant. According to the testimony of the probate judge, the Negro population of Washington County at the time of trial was thirty (30) percent Negro and fifty (50) percent of the total population of Washington County was female. There were eighty-five jurors on the venire being seventy-five regular and ten special jurors. According to the testimony of the circuit clerk if the jury rolls were in front of him he could not positively identify the sex of every juror on the list nor could he positively identify the race of every person on the list. The clerk went on to say that in looking over the venire list of eighty-five jurors he recognized twenty-one females composed of both races. He further testified that there were a number of Negro males and without being completely accurate he would place the number at five Ne-

gro males. It is to be noted that appellant did not call a single member of the jury commission to give testimony as to the composition of the jury rolls in Washington County. The trial court properly overruled appellant's motion to strike the jury venire facias.

In Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, Mr. Justice White writing for the majority said:

"Venires drawn from the jury box made up in this manner unquestionably contained a smaller proportion of the Negro community than of the white community. But a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. * * *"

Swain was followed by this court in Junior v. State, 47 Ala.App. 518, 257 So.2d 844.

Next we consider the contention advanced by appellant in his brief that the trial court erred in allowing certain cross-examinations by the State of appellant's character witnesses. In order to better understand the alleged errors, we present here certain parts of the State's cross-examination which were objected to by appellant.

"Q. Mrs. Henry, would you consider the reputation of someone good who owns and carries a gun or pistol?

"MR. PALUGHI: Objection.

"A. I don't know anything about that.

"JUDGE LINDSEY: Overrule the objection.

* * * * * *

"Q. Reverend Henry, would you consider someone to have a good reputation in the community, generally or for violence, who owns and carries a gun or pistol.

"A. Say that again. I didn't understand you.

"Q. Would you consider someone who owns and carries a pistol to have a good reputation in the community?

"A. Would I consider them to have a good reputation? Well, I mean as far as my concern if a thing if I don't know it—there's a lots of people carry a gun, but . . .

"Q. Would you consider those people to have a good reputation?

"A. Well, as long as they haven't never had no violence ain't nothing to say but they have a good reputation.

"Q. Would you consider a person who owns and carries a pistol to have a good reputation for violence?

"MR. PALUGHI: Objection to the form of the question. That has nothing to do with a reputation for violence, if it please the Court.

"JUDGE LINDSEY: Overrule the objection."

■ Generally, on cross-examination of a defendant's character witness, who has testified to accused's good reputation, the prosecution may not elicit personal knowledge of the witness concerning specific misdeeds of the defendant. Moulton v. State, 88 Ala. 116, 6 So. 758; Echols v. State, 256 Ala. 389, 55 So.2d 530.

In Mullins v. State, 31 Ala.App. 571, 19 So.2d 845, our Court of Appeals, Carr, J., held that it was improper for the solicitor to ask defendant's character witness questions which assumed facts germane to defendant's guilt. One of the improper questions was in the following form:

"Assuming that this defendant had gone to the home of another man at night time and shot a pistol around in the room and a young lady ran out by him and he ran out after her and shot the pistol again and then he turned around when a man asked him what was the

matter—he turned around and shot this man, would you say that he was a man of good character." 19 So.2d at 847.

It is plainly evident why this question was improper as it attributed specific acts to the defendant and presupposed his guilt. Another leading case on this point is Gray v. State, 21 Ala.App. 409, 108 So. 658, a murder case. In *Gray*, the objectionable question was as follows:

"'Do you consider a man of good reputation that puts a pistol in his pocket in the daytime, conceals it about his person, and goes over to his neighboring town, Jacksonville, Ala., and spends a portion of the day, and goes back to a church with his own people with a pistol concealed on his person, and goes from there to a road camp where gambling is going on, and engages for more than two hours in what they call a skin game, the pistol still concealed on his person, would you still consider him a man of good repute?'" 21 Ala.App. at 410, 108 So. at 659.

Quite obviously, the question called for the character witness to consider and assume specific acts of the defendant and therefore was improper. See also Harmon v. State, 22 Ala.App. 288, 115 So. 67; Patrick v. State, 39 Ala.App. 240, 97 So.2d 589; Chiles v. State, 26 Ala.App. 358, 159 So. 700; and annotations: 71 A.L.R. 1504 and 47 A.L.R.2d 1258. Thus, the general rule which we can deduce from this line of cases seems to be that it is improper for the prosecuting attorney on cross-examination to ask defendant's character witnesses questions which assume that defendant did an act tending to prove him guilty of the crime charged.

In the case at bar, the prosecuting attorney did not phrase his questions in such a manner that each question assumed appellant's guilt in the shooting of Chief Clark. Rather, the questions were couched in terms designed to explore what standard these character witnesses used in judging "good" reputations. Cross-examination is a proper means of exploring a witness's knowledge of the subject for which the other party has produced him. Title 7 § 443, Code of Alabama 1940. And it is generally stated that the scope of this cross-examination is largely within the trial court's discretion. White v. State, 41 Ala.App. 54, 123 So.2d 179, cert. den. 271 Ala. 702, 123 So.2d 186; Dufresne v. State, 40 Ala.App. 476, 116 So.2d 385, cert. den. 270 Ala. 737, 116 So.2d 388. Because the appellant had already been cross-examined concerning his ownership and possession of a .22 caliber revolver, we do not believe it was an abuse of discretion on the part of the trial court in allowing the questions to be answered by the character witnesses. Moreover, these character witnesses all gave favorable testimony for appellant notwithstanding the questions by the prosecuting attorney with reference to appellant carrying a pistol. Nor do we feel that the questions were of such a nature that they assumed that appellant, Mitchell, did the act for which he was on trial.

Appellant claims error was committed by the District Attorney in his closing argument to the jury.

From the record:

"MR. TURNER: It is the State of Alabama's position, and I'm convinced myself, personally, as an officer of this county and this state . . .

"MR. PALUGHI: Objection on his convictions. That's immaterial, improper argument.

"JUDGE LINDSEY: I don't know what he's fixing to say. I will have to hear more from him. I don't know what statement he's fixing to make.

"MR. TURNER: . . . that the evidence from this stand is beyond any doubt of the guilt of the defendant, Milton Mitchell, Jr., and as the prosecuting officer of Alabama and of this county, I'm calling on you to convict this defendant for the crime that is charged in this indictment."

**130**

It is never proper for a District Attorney to express his personal views as to the guilt of the accused in his summation to the jury. Where, however, the argument which constituted mere expression of opinion and deductions and conclusions based upon the evidence and which did not appeal to prejudice, was not prejudicial and is not reversible. Ellis v. State, 244 Ala. 79, 11 So.2d 861; Cranmore v. State, 41 Ala.App. 276, 129 So.2d 121, and cases there cited.

Appellant's argument that the trial court erred in failing to grant the motion for a new trial is without merit. The general rule is that where the evidence affords a reasonable inference adverse to the innocence of the accused, a jury question is presented. Marks v. State, 35 Ala.App. 361, 46 So.2d 854; Pate v. State, 32 Ala. App. 365, 26 So.2d 214; Roughton v. State, 38 Ala.App. 17, 77 So.2d 666, cert. den. 262 Ala. 703, 77 So.2d 667. From the record, it is abundantly clear that the evidence afforded more than a reasonable inference adverse to appellant's innocence and, therefore, the trial court was not in error in denying the motion for a new trial on the ground that there was insufficient evidence to sustain the conviction.

The trial court gave the jury fourteen (14) written instructions requested by appellant. He refused six (6) written charges. The refused charges were all predicated upon circumstantial evidence. Requested charges emphasizing the law of circumstantial evidence are properly refused in view of direct proof of accused's guilt. Duke v. State, 257 Ala. 339, 58 So.2d 764.

Mindful of our duty enjoined upon us by statute, we have carefully searched the record for errors affecting the substantial rights of appellant. We have found none and the case is due to be affirmed.

Affirmed.

All the Judges concur.