407 So.2d 95 (1981)
Sammy SADLER
v.
STATE of Mississippi.
No. 53058.
Supreme Court of Mississippi.
December 9, 1981.
*96 Burdine & Austin, Curtis H. Austin, Columbus, for appellant.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, WALKER and BOWLING, JJ.
SMITH, Presiding Justice, for the Court:
Sammy Sadler was indicted for the crime of aggravated assault upon a law enforcement officer. He was tried upon that charge in the Circuit Court of Lowndes County, was convicted, and sentenced to serve a term of 28 years imprisonment. He has appealed here, assigning several grounds for reversal.
The incident, which gave rise to Sadler's indictment and conviction, occurred on Sunday, December 7, 1980. It appears from the evidence that Sadler had gone to the home of one Griffin, where he spoke with his "wife", Barbara "Tiny" Perkins. After a quarrel with Sadler, she and her children had moved into the Griffin home. Appellant had been drinking, and after some conversation, obtained a shotgun from the trunk of his car and threatened to kill Tiny and her children. This conduct on Sadler's part was induced by his belief that Tiny was engaged in a relationship with a new boyfriend, one Harris.
When Sadler approached Griffin's house with the gun, Griffin kept him from coming into the house. The supposed boyfriend, Harris, and Tiny ran out the back door and hid in the woods. Meanwhile Tiny had dispatched her son to a neighbor's house to call the police. Having done this, Tiny returned to the Griffin house.
In response to the call, Deputy Sheriff Jimmy Covington was officially informed that Sadler was at the Griffin home threatening to kill Tiny and her children with a gun. Deputy Covington, answering the call, drove his official automobile into the Griffin driveway where he saw Sadler in the yard with the shotgun in his hands. Drawing his service revolver, Deputy Covington ordered Sadler to put the gun down. Griffin also asked Sadler to put the gun down. Sadler refused and Deputy Covington repeated his order to Sadler. Sadler continued to refuse to drop his gun. As Griffin backed away from Sadler, Sadler fired the gun in the direction of Griffin's house. Griffin's wife yelled while standing in the door, "Oh my God I've been shot" and fell to the floor. When this happened, Deputy Covington fired one shot over appellant's head and appellant began to run away. Covington fired two more shots at appellant as he disappeared around the corner of the house. Covington then put his revolver on the seat of the patrol car and *97 began taking his shotgun out of the car. However, before he was able to get out of the car with his gun, Sadler levelled his shotgun at Deputy Covington and fired at him from the corner of the house. The blast from Sadler's gun struck Deputy Covington in the face and on the hands, seriously wounding Deputy Covington and causing him to lose the sight of one eye.
Among the alleged errors assigned is that the trial court should have sustained Sadler's motion for a new trial on the ground that the jury verdict was not supported by sufficient credible evidence.
Considering the evidence, as we must, in the light most favorable to the state and accepting as true the evidence supporting or tending to support the verdict, with all inferences supportive of the verdict that reasonably may be drawn therefrom, we find no merit in this contention. Glass v. State, 278 So.2d 384 (Miss. 1973). In Spikes v. State, 302 So.2d 250 (Miss. 1974), this Court said:
On appeal, in this situation, in passing upon the sufficiency of evidence to support a verdict, this Court must accept as true the evidence which supports the verdict. Murphree v. State, 228 So.2d 599 (Miss. 1969). [302 So.2d at 251].
The resolution of such conflicts as there were in the evidence in this case, was peculiarly for the jury. In Hankins v. State, 288 So.2d 866 (Miss. 1974), it was said:
In Evans v. State, 159 Miss. 561, 132 So. 563 (1931), we stated:
We invite the attention of the bar to the fact that we do not reverse criminal cases where there is a straight issue of fact, or a conflict in the facts; juries are impaneled for the very purpose of passing upon such questions of disputed fact, and we do not intend to invade the province and prerogative of the jury.
(159 Miss. at 566, 132 So. at 564)
We conclude there was ample evidence to support the verdict of the jury and we decline to intrude into the factfinding office of the jury. [288 So.2d at 868].
Tiny's boyfriend, Harris, testified that he was at the Griffin home as were Tiny and the people who lived in the house. This witness testified that Sadler had gone to the Griffin house on three occasions that day. On the third visit Sadler had gone to his car, obtained a shotgun out of the trunk, and so armed, started into the house. However, Griffin was able to prevent his entry. Harris saw a police car arrive with the "lights going." This was Deputy Covington responding to the call for help.
The above statements are corroborated by the testimony of Griffin's eleven year old son, Terrell. This witness said that appellant had been at the Griffin home on three different occasions and on the last visit had opened the trunk of his car from which he took a "long gun." He described how his father had tried to keep Sadler from coming into the house and how his mother had instructed him to call the police. Terrell said that he had run up the road to the Holliman home where he had called the police. When Covington arrived in his official automobile it had its "blue lights" on. Terrell got in the car with Deputy Covington and had informed him that Sadler was trying to kill Tiny at the Griffin home and that Sadler was armed with a gun. When Deputy Covington arrived, he was in an automobile easily recognizable as a sheriff's patrol car. It had the usual lights on top and Deputy Covington was dressed in a sheriff's uniform. The testimony of this witness and other testimony was to the effect that Griffin had gone over to Sadler and asked him to put his gun down and that Sadler had refused to do so, causing Griffin to back away. Sadler then fired his gun and the blast struck near the front door of the Griffin house. Covington heard someone scream "Oh my God I've been shot" and saw someone fall. It was at this point that Deputy Covington had fired over Sadler's head and Sadler had begun running away. Covington then fired at appellant twice as he went around the corner of the house. Covington placed his revolver on the seat of his patrol car and reached in to get his shotgun. As he started out of the car he saw appellant had returned from around *98 the corner of the house. Sadler shot Deputy Covington in the face and hands. As a result of this shooting, Covington is blind in his left eye and has numerous shotgun pellets still embedded in his face and has not regained the use of one hand.
Sadler did not take the stand.
Based upon the above evidence the jury was fully warranted in finding Sadler guilty of the offense charged.
Complaint is made of the action of the trial court in declining to give instruction D-3. The State points out that refusing to give this instruction was proper. Instruction D-3 reads as follows:
The Court instructs the jury that if Deputy Jimmy Covington fired and injured the defendant, Sammy Saddler, [sic] in an attempt to effect his unlawful arrest and further that the force used by Deputy Covington was excessive and life endangering, then Sammie [sic] Saddler was entitled to respond or counter with reasonable force for self-defense if the firing of the weapon by Jimmy Covington was unreasonable and unnecessary, then and in that event the defendant, Sammie [sic] Saddler, is not guilty as charged and it is your duty to so find.
It is pointed out that the trial court gave instruction C-21 which told the jury:
The Court instructs the jury that if you believe from the evidence in this cause that Deputy Jimmy Covington committed an unprovoked or unnecessary assault or attack upon the defendant, Sammy Sadler, while attempting to effect his arrest, then in that event the defendant had the right to resist said unprovoked or unnecessary attack, and if you further believe the defendant's use of this force was not more than reasonably necessary for his own protection and that the defendant's conduct did not cause the assault, then you should find the defendant not guilty.
This Court has said that a trial judge is not required to give instructions covered by other instructions, although the language may differ. Bullock v. State, 391 So.2d 601 (Miss. 1980), Ragan v. State, 318 So.2d 879 (Miss. 1975).
The trial court committed no error in declining to grant instruction D-3.
Finally, complaint is made that certain photographs admitted into evidence showing the extent of the injuries inflicted upon Deputy Covington was error and required reversal. These photographs depicted the bodily injury which resulted when Sadler shot Deputy Covington in the face with his shotgun.
In Voyles v. State, 362 So.2d 1236 (Miss. 1978), this Court said:
This Court has held that in considering the competency, relevancy and materiality of photographs, it is within the sound discretion of the trial judge to determine whether or not the photographs have a legitimate evidentiary purpose. Irving v. State, 228 So.2d 266 (Miss. 1969); Martin v. State, 217 Miss. 506, 64 So.2d 629 (1953); Coleman v. State, 218 Miss. 246, 67 So.2d 304 (1953). [362 So.2d at 1241].
See: Steed v. State, 396 So.2d 625 (Miss. 1981); Bullock v. State, 391 So.2d 601 (Miss. 1980); Irving v. State, 361 So.2d 1360 (Miss. 1978), Cert. Denied, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979).
The severity of these injuries, which were the natural consequence of the discharge of the shotgun into Deputy Covington's face, removes any question that Sadler's intention was to kill or grievously wound Deputy Covington. The trial court did not abuse its discretion in admitting these photographs into evidence.
The conviction and sentence appealed from must be and are affirmed.
AFFIRMED.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.