412 So.2d 754 (1982)
Freddie SPARKS
v.
STATE of Mississippi.
No. 53130.
Supreme Court of Mississippi.
April 14, 1982.
*755 Roy O. Parker & Associates, Nora J. Hall, Tupelo, for appellant.
Bill Allain, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, P.J., and WALKER and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Lowndes County wherein Freddie Sparks, defendant/appellant, was indicted, tried and convicted for the sale of a controlled substance, to-wit, cocaine. Upon conviction, Sparks was sentenced to serve twenty years in the Mississippi Department of Corrections and fined $10,000. We affirm. Sparks appeals his conviction and assigns the following errors:
1. The lower court erred in finding the appellant guilty in that the verdict was against the overwhelming weight of the evidence.
2. The lower court erred as a matter of law in permitting testimony as to the tape-recorded conversations when the tapes themselves would have been the best evidence.
3. The lower court erred as a matter of law in admitting tape recordings of the telephone conversations of April 5, 1979, where the individual conversing with the state's witness was not identified.
Robert M. Turner and Captain Charles Spillers, agents for the Mississippi Bureau of Narcotics, were involved in an undercover operation in Lowndes County in March and April of 1979. Turner, who was using the name Mike, first contacted appellant by phone on April 1, 1979. After several conversations, appellant advised Turner he could supply one ounce of cocaine for $2500. Turner had no personal contact with the appellant other than by phone. Negotiations fell through on April 4 so agent Turner called the appellant again on April 5. Appellant agreed to contact agent Spillers by telephone at Spillers' Tupelo number.
Spillers was contacted at approximately 8:45 a.m. on April 5. The caller identified himself as Mike's friend. The caller refused to travel from Columbus to Tupelo and also requested that they deal through Mike. It was then agreed that Spillers would travel to Columbus where he would contact the caller at 327-2530 upon his arrival. The phone number given by the caller was listed to an Ernestine Sparks. This conversation was recorded.
When Spillers arrived at agent Turner's home in Columbus, he called the number he had been given and spoke with the same person. The caller refused to meet with Spillers at McDonald's but rather gave him directions to a meeting place and advised Spillers he would be standing outside waiting for him. This conversation was also recorded.
After Spillers' second conversation, he and Turner proceeded to McDonald's on Highway 82, followed by agent Gardner. Turner and Gardner remained at McDonald's while Spillers, following the directions given him by the caller, proceeded to a residence on Hughes Road. Spillers pulled into the driveway of the residence at approximately 10:50 a.m. Appellant and Ernest Holliday were standing in the driveway. A Ford Ranchero registered to appellant was parked under the carport and a Lincoln Continental registered to Ernest Holliday was parked behind appellant's automobile. Appellant walked up to Spillers' window and confirmed the price for an ounce of cocaine at $2500. Spillers asked for a sample of the drug to test, whereupon appellant went into the residence and then *756 returned with a ziplock baggie containing a small quantity of cocaine.
Spillers took the sample and returned to McDonald's where a field test was performed revealing the substance to be cocaine. Spillers and Turner then proceeded back to the residence. Turner was let out of the vehicle at the intersection of Highway 69 and Hughes Road, some two to three hundred yards from the residence. When Spillers arrived at the residence, both vehicles were still in the driveway; however, Ernest Holliday was standing outside alone. Holliday approached Spillers' window, whereupon Spillers indicated he was satisfied with the sample. Holliday then removed a ziplock baggie containing approximately one ounce of cocaine from his back pocket. He confirmed the price at $2500. The substance was weighed with a small hand scale produced by Holliday. Spillers handed Holliday $2500 in official state funds in payment for the substance. Spillers left the residence, picked up Turner and performed another field test which revealed the second baggie to contain cocaine. A subsequent chemical analysis of the drug revealed the substance weighed 32.1 grams.

I. Was the verdict against the overwhelming weight of the evidence?
Appellant contends the evidence presented in the case at bar created a doubt as to his guilt. In Sadler v. State, 407 So.2d 95 (Miss. 1981), this Court stated:
Among the alleged errors assigned is that the trial court should have sustained Sadler's motion for a new trial on the ground that the jury verdict was not supported by sufficient credible evidence.
Considering the evidence, as we must, in the light most favorable to the state and accepting as true the evidence supporting or tending to support the verdict, with all inferences supportive of the verdict that reasonably may be drawn therefrom, we find no merit in this contention. Glass v. State, 278 So.2d 384 (Miss. 1973). In Spikes v. State, 302 So.2d 250 (Miss. 1974), this Court said:
"On appeal, in this situation, in passing upon the sufficiency of evidence to support a verdict, this Court must accept as true the evidence which supports the verdict. Murphree v. State, 228 So.2d 599 (Miss. 1969). [302 So.2d at 251]." (407 So.2d at 97)
The state's evidence established that agent Turner arranged a cocaine buy with a subject at a telephone number of 327-2530. This number was listed to an Ernestine Sparks. The caller later contacted agent Spillers. Following the caller's direction, Spillers drove to a residence where he met appellant and Ernest Holliday. Appellant's automobile was parked in the carport. Appellant, upon Spillers' request, retrieved a small amount of cocaine from the residence which was tested by agents Spillers and Turner. When Spillers returned to the residence, Holliday delivered the cocaine. Although appellant was not seen at the time, his vehicle was still parked in the carport.
When the evidence supporting the verdict is accepted as true together with all inferences supportive of the verdict that reasonably may be drawn therefrom, the evidence was sufficient to support the verdict of the jury.

II. Did the trial court err in permitting testimony as to the tape-recorded conversations when the tapes themselves would have been the best evidence?
In Talbert v. State, 347 So.2d 352 (Miss. 1977), this Court held the best evidence rule applies only to documentary evidence. 29 Am.Jur.2d, Evidence section 436 (1967), provides in part:
Where proof of a conversation has been of two different kinds, namely, a recording thereof and testimony by witnesses who overheard it, it has been argued that both the recording and the testimony were the best evidence; however, the courts have not relegated either to a secondary position, but have held that both types of evidence are equally competent primary evidence, and that one is not to be excluded because of the existence of the other.
Accord Phillips v. State, 374 So.2d 824 (Miss. 1979), overruled on other grounds.
*757 The admission into evidence of the tape-recorded conversations did not render agent Spillers' testimony concerning these conversations inadmissible.

III. Did the trial court err in admitting the tape-recorded telephone conversations?
Appellant contends the trial court erred in admitting the tape-recorded conversations because the caller never identified himself by name. Before a sound recording is admissible in evidence, a proper foundation showing the following must be made:
(1) [A] showing that the recording device was capable of taking testimony; (2) a showing that the operator of the device was competent; (3) establishment of the authenticity and correctness of the recording; (4) a showing that changes, additions, or deletions have not been made; (5) a showing of the manner of the preservation of the recording; (6) identification of the speakers; and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement... .
See 29 Am.Jur.2d, Evidence § 436 (1967).
In Lindsey v. State, 279 So.2d 913 (Miss. 1973), and Lee v. State, 242 Miss. 97, 134 So.2d 145 (1961), this Court recognized that testimony of a person having heard a voice is competent and legitimate evidence to establish identity in both civil and criminal cases. The weight to be accorded to such an identification is a question for the jury. Pickett v. State, 164 Miss. 142, 144 So. 552 (1932).
The cases relied upon by appellant are clearly distinguishable from the case sub judice. In Vaughn v. State, 130 Ala. 18, 30 So. 669 (1901), and Dentman v. State, 267 Ala. 123, 99 So.2d 50 (1957), the only evidence identifying the caller was the fact that the caller revealed his name. In Wiggins v. State, 43 Ala.App. 382, 191 So.2d 30 (1966), the witness asserted, although he had known the defendant for about fifteen years and the voice of the caller sounded like the defendant's voice, he could not swear to the fact that the caller was the defendant. Yancey v. Ruffin, 281 Ala. 633, 206 So.2d 878 (1968), involved a witness' phone call to a corporation; however, the witness could not identify the party he communicated with.
In the case at bar, agent Spillers identified the voice on the tape as that of appellant. Although he had not heard appellant's voice prior to his two conversations with appellant on April 5, he based his identification on subsequent conversations with appellant as well as the fact that Spillers met the appellant following the caller's directions shortly after the second conversation. The identification of a voice can be made either before or after the conversation at issue. See Hurst v. State, 240 So.2d 273 (Miss. 1970), and Pyle and Mockbee, Authentication and Identification, 49 Miss.L.J. 151, 172 (1977).
In the present case, officer Spillers identified appellant as being the author of the phone calls after conversing with appellant on numerous occasions subsequent to the recorded conversations. Moreover, appellant's identification was corroborated by the fact that agent Spillers met with him following the second conversation in which the caller stated:
Yeah, Gibson's store, it's on the right. When you see Gibson's Store you gonna cross a bridge, you gonna cross a big bridge. Right after you cross the bridge you gonna come into a light, the first light. Okay see Gibson got a light in front of it, but you just pass on by Gibson's and cross the bridge, after you cross the bridge you gonna up there and see the light, that's 69. Get in your right hand lane, you know, turn off, and you gonna be on Highway 69. Just take a right, and just come straight on out. Don't turn off no where until you get up to where it use to be (inaudible) Fork Lift place. When you see Clark's Fork Lift place, turn to your left, just come straight on down, and I'll be standing out there, you'll see me somewhere. I'll be on the road. (inaudible) (emphasis added)
*758 Based on the foregoing, we believe appellant was sufficiently identified so as to render the recorded conversations admissible against him.
Finding no error in the conviction and sentence of appellant, this case should be and is hereby affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and SUGG, P. JJ., and WALKER, BROOM, ROY NOBLE LEE, BOWLING and HAWKINS, JJ., concur.