TYSON, Presiding Judge.
The appellant was indicted for the second degree burglary of Railroad’s Oyster Bar by taking some Miller’s Light beer therefrom. The jury found the appellant guilty of burglary, as charged, and the trial court entered judgment which set sentence at ten years imprisonment in the penitentiary.
Edward Burns testified that he owned and operated Railroad’s Oyster Bar, located on Second Avenue in Opelika, Alabama, on June 18-19, 1976. Burns testified that he locked his place of business between 10:00 and 11:00 p. m. and returned about 7:00 a. m. the next day. He testified that he found a plate glass window broken in the front of the store, and that two cases of Miller’s Light beer were missing. He testified that he had five cases upon closing the store, and only three were there when he opened it the next morning.
On cross-examination he testified that he had a number of cases of beer on inventory, but only five cases of Miller’s Light beer, and that none of this had been placed in the cooler. He also stated that the window appeared to have been broken from the outside of the building as the glass was scattered over the interior. Several photographs were then identified, showing the window and interior, and were admitted in evidence.
George Dozier Norton stated that he worked at Railroad’s Oyster Bar in Opelika on June 18-19, 1976. He testified that he locked the place of business shortly before midnight, that he had five cases of Miller’s Light beer in cans stored in one of the rooms near a window, and that these had not been placed in the cooler. He arrived at work around 9:30 the following morning and found only three cases of Miller’s Light beer. He testified that a plate glass window had been broken.
Roy Berry testified that he was a lieutenant with the Opelika Police Department in June, 1976. He testified that he observed the appellant, Charlie Frank Dardy, about ten minutes until 6:00 a. m. on June 19, 1976, standing alongside the building in which the Railroad’s Oyster Bar was located on Second Avenue in Opelika. Lt. Barry testified that the appellant had on black pants and a multi-colored shirt, that it was daylight at this time of the year. He testified that he recognized the appellant as he knew him. Lt. Barry further testified that later that morning he was advised of a breaking and entering of the Oyster Bar, and that he drove to a residence on Hooper Street and saw the appellant and one James Frank Taylor, another black male, seated on top of an abandoned Chevrolet car, that a Miller’s Light beer can was also on top of the car. He stopped to ask the men where they got the beer and observed two six- *586 packs of Miller’s Light beer on the floorboard of the abandoned car. He stated this was about 7:30 a. m.
Lt. Berry further testified that Lt. Ab-bett drove over and they looked about the abandoned car for additional beer. He testified that he gave the appellant a Miranda card warning and advised him that he was under arrest for burglary.
Frank James Taylor testified that he lived at 1423A on Hooper Street in Opelika on June 19, 1976. He testified that the appellant’s father lived next door, and on the morning in question he was there when a police car drove up. He testified that he had paid the appellant $2.00 for one six-pack of Miller’s Light beer. He testified that the beer was warm. He further testified that the appellant’s stepfather, Charlie Jackson, was his next door neighbor and that they had been by the home of one Andrew Trimble early that morning and had some drinks. He testified that he was “pretty high” when Lt. Berry drove up on the morning of June 19, 1976.
Lt. Nick Abbett of the Opelika City Police testified that he investigated a burglary of the Railroad’s Oyster Bar in Opelika on the morning of June 19, 1976. He observed a large plate window which was broken from the exterior of the building and the glass was scattered on the inside, but practically no glass was on the exterior of the building. He- testified that he was there when photographs were made and that he took samples of the glass and placed them in a brown manila envelope, which he marked for identification and took the samples to the State Department of Toxicology at Auburn. He was also present when Lt. Berry brought the appellant, Charlie Frank Dardy, to Police Headquarters, and that he observed the Miller’s Light beer that had been taken from inside the abandoned Chevrolet. The beer, which was hot, was taken to Police Headquarters and the appellant was charged with second degree burglary. He testified the appellant was wearing black pants and a long sleeved shirt, that the sleeves had been rolled up. He testified that the pants and shirt were marked and placed in a brown bag, then subsequently delivered by him to the State Department of Toxicology. He stated that the beer which was seized consisted of two six-packs of Miller’s Light beer.
Tellus D. Hudson stated that he was a Criminalist with the State Department of Toxicology in Auburn on June 21,1976. He testified that he received two bags containing a pair of pants and a shirt, a pair of shoes, and one containing some broken glass and paint samples. These items were then identified by Mr. Hudson. He testified that he found three chips of paint and three small pieces of broken glass which were rolled up in the shirt sleeve of the shirt.
Mr. Hudson stated that there were three layers of paint, one a dark blue, a middle layer of red, and a top layer of white enamel, which were on the pieces of broken glass brought to him by Lt. Abbett. He also found pieces of glass on the shirt, and tests made determined that the paint samples had come from a common source.
Mr. Hudson also testified that he tested the glass for its color, density, and refracted index (the bending of light rays) and found from these tests that the samples of glass and those found on the shirt belonging to the appellant had come from the same source. He then gave his opinion that the glass particles found on the shirt had come from the same store window as the broken glass brought in by Lt. Abbett.
The appellant made a motion for a directed verdict which was duly overruled.
The appellant offered the testimony of his mother, Mary Dardy, who testified that her son lived with her on June 18-19, 1976, at her home at 542 East Hardaway Street in Opelika. She testified that she heard her son come in about 4:00 that morning and that he left again about 5:30 or 6:00, and that he was accompanied by one Jessie Ellis. On cross-examination she testified that often times her son went to see his stepfather, but that she was separated from Charlie Jackson.
Charlie Jackson, the appellant’s stepfather, stated that he lived at 1423B Hooper *587 Avenue in Opelika on June 19, 1976. He stated that he and his wife were separated, and that his stepson, Charlie Frank Dardy, lived with his mother. Jackson related that he was at the home of his friend, Andy Trimble, between 6:30 and 7:00 that morning, which was about one-half block from his home. He stated that Jay Walton and Frank James Taylor were also there. He said that the men had been sitting around drinking for thirty minutes to one hour when his stepson, Charlie, got there. He said that Charlie was there ten or fifteen minutes and then left, and that Frank Taylor left with him. He said that Frank Taylor had been drinking wine, and that he, himself, had a pint of Gilby’s Gin. He further stated he saw his stepson when the police arrested him.
Charlie Frank Dardy stated he was twenty years of age and lived with his mother at 542 East Hardaway on June 18-19, 1976. He testified that he had been with one Jessie Ellis during the evening, and that they had picked up Jessie’s sister and taken her to the “Famous Door Club” in Lee County. He said that they left there about 2:00 in the morning, that they had been drinking beer and wine, that they drove toward town. He said that he stopped by his mother’s home about 4:00 in the morning, and that he left and decided to go over to his father’s (stepfather’s) home on Hooper Street. He stated that at this time he was walking. He said that Jessie left him to go pick up his mother. The appellant stated that when he arrived at his father’s home, no one was there, and he then went to Andrew Trimble’s house where he found several men sitting around having drinks. He said that he asked for a cigarette and upon seeing that they were out, he walked to a service station near the Railroad’s Oyster Bar and bought some. He said that he then walked back toward his father’s house, and on his way back he stopped by Frank Taylor’s yard. He said that Taylor asked him if he wanted a beer, and that he had started drinking it when Lt. Berry drove up. He denied having sold Taylor any beer that day or going by the Oyster Bar, or parking at the Oyster Bar.
On cross-examination the appellant admitted a 1975 conviction of petty larceny and also a conviction of second degree burglary and grand larceny of a motor vehicle.
I
In Eason v. State, 48 Ala.App. 471, 265 So.2d 913, we find:
“. . . The applicable elements of second degree burglary are: (1) breaking, (2) entering, (3) with intent to steal or to commit a felony. . . .”
It is clear from the evidence above set forth that the State here presented a prima facie case. Behel v. State, 40 Ala.App. 689, 122 So.2d 537; Hare v. State, 52 Ala.App. 279, 291 So.2d 371. Therefore the appellant’s motion for directed verdict on the basis that the State failed to establish a corpus delicti or prove a prima facie case was properly denied. Likewise the trial judge properly refused the affirmative charge and the affirmative charge with hypothesis in this case.
II
Appellant asserts that he applied for youthful offender treatment on August 29, 1976, and that the record does not reflect that such was denied, therefore the trial court improperly tried him as an adult.
It is clear under Pendleton v. State, 295 Ala. 325, 329 So.2d 142, that this Court has plenary power to direct that a supplemental record be sent this Court.
We have done this and find that in fact that following investigation and a hearing held October 1, 1976, the trial court did deny the youthful offender petition of the appellant.
We are of the opinion that this was proper under the facts presented. Clemmons v. State, 294 Ala. 746, 321 So.2d 238.
We have carefully examined this record and find no error therein. The judgment is
AFFIRMED.
All the Judges concur.