269 So.2d 136

Jacob SUGGS

v.

STATE.

8 Div. 183.

Court of Criminal Appeals of Alabama.

Nov. 14, 1972.

William G. Hamm, Jr., Huntsville, for appellant.

William J. Baxley, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

DeCARLO, Judge.

The Circuit Court of Madison County found Jacob Suggs guilty of burglary in the second degree and sentenced him to ten years in the penitentiary. He now appeals.

The circumstances surrounding his arrest were developed in the following testimony of Huntsville Policeman, Nolan Bragg:

At approximately 12:40 A.M., on March 9, 1970, while patrolling his assigned area in the City of Huntsville, he saw the front door to Sasser's Grocery store had been splintered. He radioed the station that the grocery store had been broken into, and then checked the door to make sure entry had been gained into the building. Pushing the door open, he saw a piece of wood lying inside. As he got back into the car to call Mr. Sasser, he saw a black 1963 Pontiac automobile slowly pulling out from the west side of the building. Officer Bragg followed the automobile when it pulled into the intersection and stopped it about 100 yards up the street. Appellant, one of two black males in the car, was driving. Upon approaching the car to ask for the driver's license, he saw a television set in the back seat, which he recognized as one he had seen several times before in Sasser's Grocery on the shelf over the counter. After seeing the television set, he asked appellant to get out of the car, and then arrested him for burglary. The appellant refused to be handcuffed, and before the two men could be placed in the officer's car, another patrol car came along in response to his previous call. The appellant and his companion were taken to the police station in two other cars, and Officer Bragg remained at the scene to make his report. The automobile which appellant was driving stayed at the scene until it was later towed off.

Officer Bragg remained at Sasser's Grocery until the owner, Jesse Sasser, arrived. He and two other officers then assisted Mr. Sasser in taking an inventory and compiling a list of missing items.

Huntsville Detective Sergeant Robert Owen testified that he spoke with appellant about 1:15 A. M., on the same day, and advised appellant of his rights (Miranda). Subsequently, appellant signed a rights waiver, which was designated as State's Exhibit Two. At the same time, appellant also signed a Form for Permission to Search without a Search Warrant (State's Exhibit One), and the alleged owner of the automobile, Mary Bell Wilson, signed the same waiver as a witness. Sgt. Owen then conducted a search of the impounded Pontiac and found in the trunk of the car, numerous cartons of cigarettes; packages of chewing gum and playing cards; soap, combs, billfolds, sun glasses, cigars, socks, and a file box containing wholesale bills to Sasser's Grocery for cigarettes and groceries. He further testified that an Admiral television was found inside the car.

Appellant's principal complaint on this appeal is that an illegal arrest cannot be validated by evidence obtained in a subsequent search.

I

The only consistency which exists in the law of search and seizure is the inconsistency of the decisions. In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29

L.Ed.2d 564, the court acknowledged the disharmony in this area by its statement:

"The decisions of the Court over the years point in differing directions and differ in emphasis. No trick of logic will make them all perfectly consistent."

■ Searches conducted without the prior approval of a judge or magistrate are per se unreasonable under the Fourth Amendment. On this, the court has agreed; however, it has established exceptions to this principle, and in the framing of these exceptions, disagreement has occurred.

The automobile is the basis for one of the exceptions, but it is fraught with qualifications.

Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, was the first major case in which the Supreme Court enunciated this exception. There, the petitioners were stopped on the highway by federal agents who had probable cause to believe that petitioners were bootlegging, and a search of their automobile produced the contraband. In this 1925 decision, the court held that conveyances, such as automobiles, may be searched without a warrant under circumstances that would not justify the search of a home, if there was probable cause to believe the automobile contained articles the police were justified in seizing. The Supreme Court felt that due to the mobility of the automobile, and the occupants having been alerted by the police, the circumstances made obtaining a warrant impractical. Petitioners further contended that the search was valid only if conducted as incident to a lawful arrest. The court, in rejecting this argument, declared that the right to search and the validity of the search were not dependent on the right to arrest, but were dependent upon the reasonable cause the seizing officer had for believing the vehicle's contents offended the law.

In 1970, the *Carroll* principle, "exigency resulting from mobility," was expanded by the court in Chambers v. Maroney, 399 U. S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. In this case, the court sanctioned the warrantless search of an impounded automobile where the officers had probable cause to believe that it contained evidence of a crime. The defendant and others were stopped by the police in an automobile within a hour of a service station robbery. Upon information supplied by witnesses that the car and its occupants were involved in the robbery, all were arrested, and the car taken to the police station. There, a thorough search, without a warrant, revealed the evidence which resulted in a conviction.

The *Carroll* exception was the basis of the court's holding that the delayed warrantless automobile search did not violate the Fourth Amendment. The court reasoned that the police had probable cause to search the car for guns and stolen money. The probable cause factor having once attached, continued to obtain, and a later search at the station house was adjudged not to be unreasonable. It was noted that the arrest here was made in a dark parking lot in the middle of the night, and a careful search was impractical, and perhaps unsafe for the officers.

■ In reference to appellant's claim that the search of the automobile was the result of an unlawful arrest, we hold that the officer had probable cause to make the arrest. In Stacey v. Emery, 97 U.S. 642, 24 L.Ed. 1035, the court defined probable cause as follows:

"If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient." *Carroll*, supra.

In the instant case, Officer Bragg observed the apparent break-in of Sasser's Grocery in the early morning hours and saw the appellant's car pull slowly from beside the building. After he stopped appellant's car some one hundred yards up the street, he recognized a television set in the back seat of the car as one belonging to Sasser's

store. These facts were sufficient to lead Officer Bragg to believe that the car and its occupants had been involved in the store burglary, and the subsequent arrest was justified.

The incriminating evidence was obtained at the City Hall some forty minutes following the arrest. Sgt. Owen conducted the search after obtaining a search waiver from the appellant.

## II

■ The appellant questions the voluntariness of the search waiver and complains that convincing proof of it being freely and intelligently given was not shown. It is our belief that the presence or absence of the search waiver would not have affected the validity of the search. The basic questions posed in *Chambers*, supra, and the instant case are so similar, we are constrained to follow that decision and hold the search of the impounded automobile at City Hall valid.

In support of his argument, the appellant relied on Preston v. United States, 376 U. S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, wherein Preston and two companions were arrested on a vagrancy charge while they were sitting in an automobile. They were taken to the police station, and their car removed to the garage. Soon thereafter, the officers conducted a search of the car, which produced items leading to their conviction.

The evident distinction in *Preston, supra,* is that the search of Preston's car was unrelated to the vagrancy charge, whereas here, the impoundment and search of the automobile were closely connected to the burglary offense for which Suggs was arrested.

The decision in *Chambers*, supra, with its delayed search, was used to validate a warrantless auto search in United States v. Boyd, 5 Cir., 436 F.2d 1203. There the defendants were convicted in the U. S. District Court for the Middle District of Ala-

bama of transporting and causing to be transported, forged money orders and for conspiring to transport such securities. One of the defendants was arrested when he attempted to pass a forged money order in Montgomery. After his arrest, he gave a description of his companions and their automobile to the officers, stating they too possessed forged money orders. As the officers pursued the vehicle, it was wrecked. One occupant escaped, the other removed to the hospital, and the automobile towed to the Municipal Building, where it was searched. The court stated that these circumstances were sufficient to give the officers probable cause to believe that the car contained money orders which they were entitled to seize. It was reasonable for the officers to anticipate that such a large quantity of money orders could only be in the car since the defendants were travelling from city to city, and thus had not established a fixed stopping place. Once established, the probable cause continued to obtain during the later search at the Municipal Building, and the fruits of that search were clearly admissible. This sequence of events and the conduct of the officers demonstrated that this case was within the reach of *Chambers*, supra.

In the recent case of *Coolidge*, supra, the court attempted to clarify its position on automobile searches, and for that reason, we believe it should be scrutinized, and a distinction drawn.

Coolidge had become the prime suspect in a murder investigation. He was questioned, then released after an overnight stay in jail. Several weeks later, the police arrested him, and impounded his two cars. At the time of his arrest, the cars were parked in his driveway. His 1951 Pontiac automobile was searched two days later, and again on two subsequent occasions over a year later. Evidence from the search was introduced to show that the victim had been in Coolidge's car. Originally, seizure of the Pontiac was authorized by a search warrant, which was later held to be invalidly issued.

On appeal, the validity of the search warrant was successfully challenged and left the state with the task of fitting the case into an exception to the warrant requirement. The state attempted to invoke the *Carroll-Chambers* theory, but it was refused. In holding the evidence inadmissible as violating the Fourth Amendment, the court stated:

> "The *rationale* of Chambers is that *given* a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station. Here, we deal with the prior question of *whether* the initial intrusion is justified. For this purpose, it seems abundantly clear that there is a significant constitutional difference between stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose."

At least three factors readily distinguish this decision from the instant case. First, in *Coolidge*, supra, the officers had prior information incriminating the defendant, and there was certainly ample time for them to secure a valid search warrant.

Secondly, Coolidge's Pontiac was parked in the driveway of his home, and the opportunity for search was hardly "fleeting".

Finally, under the *Carroll* doctrine, a warrantless search of the car at the time of arrest could not have been justified, therefore, the later search at the stationhouse was plainly illegal insofar as the automobile exception is concerned.

On the other hand, probable cause immediately preceded Suggs' arrest. Also, the automobile was stopped in the street, during early morning hours where a search by the officer would have been ineffective and impractical. Since it is unquestioned that under *Carroll*, supra, an on-the-spot search based on probable cause was permissible, the later search at City Hall was valid under *Chambers*, supra.

We have searched the record as required by statute and in the absence of error, we affirm.

Affirmed.

CATES, P. J., and ALMON, HARRIS and TYSON, JJ., concur.