328 So.2d 321

Dessie THOMAS, Jr.

v.

STATE.

4 Div. 183.

Court of Criminal Appeals of Alabama.

Feb. 3, 1976.

William J. Baxley, Atty. Gen., and Kermit M. Downs, Asst. Atty. Gen., for the State.

Joseph P. Hughes, Geneva, for appellant.

LEIGH M. CLARK, Supernumerary Circuit Judge.

This appeal is from a conviction for robbery and a sentence to ten years imprisonment in the penitentiary.

Appellant was jointly indicted with two other defendants for robbing Ruth Helms of the sum of $281.00. He was tried separately; his plea was not guilty. Each of the other defendants was also tried separately, according to the records of this Court. Each of the other defendants was under the age of 21 years, but was tried without being informed of his rights under provisions of the Youthful Offender Act, Code of Alabama, Title 15, Section 266 (1) (2), (3), (4), (5) and (6), recompiled 1958.

On appeal from a conviction in one of the cases, we remanded to the trial court with directions. In accordance therewith, defendant was given an opportunity to petition for a trial as a youthful offender, which he did, but the petition was denied. We have recently affirmed his conviction. *Wilson v. State*, 57 Ala.App. 124, 326 So.2d 314, 1975, cert. denied 295 Ala. 218, 326 So. 2d 315, Alabama Supreme Court, 1976. We also remanded with the same directions the case of the other defendant. His petition for treatment under the Youthful Offender Act was granted; he pleaded guilty to the charge of being a youthful offender and was duly sentenced. After the return to the order of remand, his appeal was dismissed as moot. *Whitfield v. State*, 56 Ala.App. 656, 324 So.2d 797.

No youthful offender problem is presented here. Appellant testified that he was 21 years of age.

Ruth Helms testified on the trial of appellant that on September 29, 1971, she was manager of the Scooter Store in Hartford. About 10:30 P.M., appellant-defendant came into the store, bought a bag of candy and left. Immediately thereafter, Leroy Wilson and Walt Whitfield, codefendants, walked in. After she waited on a customer and the customer left, either Wilson or Whitfield pointed a gun at her, and the other said, "Baby, I hate to do this to you, give me your money." They ordered her to lie on the floor, which she did. One of them picked up her pocketbook and walked with it to the number one cash register, opened the cash register and loaded the pocketbook with the money. The one who pointed a gun at her told her to open the number two cash register; one of them asked her where the money was that she had taken out of the cash register and she replied by giving him the bag, which he opened and took three twenty-dollar bills out of it and left the bag in the store. They told her to stay on the floor and then left. She had observed that each had a pistol while in the store. As she got up from the floor she saw them in an automobile moving slowly through the parking lot. It was a heavy type car, about the size of her Buick, either a gray with a white or a light top or blue with a light top; she didn't know the make of the car. Neither of the two was driving the car; she could not see the driver. She then called the police. Her pocketbook was returned to her the next day at the sheriff's office. Missing from it were money and several other items, including a cigarette lighter, a roll of old pennies, some loose silver coins and a set of keys; some of these items were on the sheriff's desk; she positively identified the cigarette lighter because of the flints underneath, and she stated that she was sure the roll of coins was hers. There was a street light outside the store on the corner, and there were double rows of lights across the building underneath the "overhead" of the porch; the front of the store, including the doors, was made of glass, and no merchandise was stored in front of the windows at that time; the windows were absolutely clear. While the robbery was taking place, she noted a police car driving through the parking lot about thirty to thirty-five feet from the building.

State Investigator Joe Tom Masters testified that about 10:30 A.M. September 30, 1971, he searched Dessie Thomas' 1969 Cadillac automobile in front of the Geneva City Hall, where it was parked. He described the automobile as one with a blue bottom and a white or light top and a Miami, Florida, tag on it. He had a search warrant for it. In searching the car, including the trunk, he found a paper bag with forty-four one dollar bills in it, a roll of pennies, four Top Value yellow stamps; several quarters, dimes, nickels and pennies and a cigarette lighter. He also found two other paper bags with money in them. One hundred and ten quarters were in one; forty-four one dollar bills, ninety-nine dimes, eleven nickels and fifteen pennies were in the other. Appellant was present when the search was made and let them have the key to open the trunk of the car. Captain Masters left all of the items in the sheriff's office. The first bag mentioned had been opened when shown to Captain Masters while on the witness stand. The other two had not been opened apparently, and he had signed and sealed them before leaving them in the sheriff's office.

A first cousin of appellant testified that on the morning of September 30, police officers came to his grandfather's, where Dessie Thomas was visiting and Walt Whitfield and Leroy Wilson were at the time, and took Walt and Leroy to the City Hall. About ten or fifteen minutes after they left, Dessie gave him a pistol, stating that he (Dessie) did not have a permit, that "if they caught him they would give him a fine." The witness afterwards turned the pistol over to Captain Masters. A pistol was then introduced in evidence, which Captain Masters had testified was the same pistol.

Defendant testified that he took no part in the robbery of the Scooter Store and

that he had no knowledge of or information concerning it until the next day. He said he was in the Scooter Store about five minutes after ten o'clock and bought some candy and chewing gum. He narrated his whereabouts the afternoon before and the entire night of the robbery. He stated that he had brought his two friends, Leroy Wilson and Walt Whitfield, from Miami to Geneva County, Alabama, about a week before the robbery. He and they were staying at the home of his grandmother in Geneva. His aunt also lived in Geneva, and he was keeping his clothes at his aunt's house. On the night of the robbery he went to his aunt's house and changed his clothes; he left there and went to Dothan with Walt Whitfield and Leroy Wilson; he was driving his Cadillac; they left Dothan around 9:15 P.M., stopped at Hartford, drove on to Geneva where he left Wilson and Whitfield at his grandmother's house about a quarter to ten. He then returned to Hartford by himself, arriving there about 10:00; he went by his girl friend's house and upon leaving stopped at the Scooter Store and bought some candy and chewing gum. He then went to the home of Jacqueline Peacock at Samson, stopping on the way briefly in Geneva. He arrived at the home of Jacqueline about 10:30 P.M. and stayed there the rest of the night, until about 9:30 the next morning. She was the only one there when he arrived, but later four others came and there was some drinking. He passed out and woke up the next morning. He went to his grandmother's house and was informed there that the police had Wilson and Whitfield. He gave his gun, the gun that had been offered in evidence, to John Doss McKinney and told him to keep it for him. He went to the City Hall in Geneva and parked his car in front. Soon thereafter he and Wilson and Whitfield went with officers to the Scooter Store in Hartford.[1] They returned in

1. Although it seems clear that all parties, witnesses, jurors, the judge and the jury were so well acquainted with the places and distances between places involved that there was no necessity for any evidence on the subject, it should be stated perhaps that Hartford, where

the robbery occurred, is approximately twelve miles east and that Samson, where defendant testified he spent the night with Jacqueline, is about twelve miles west of the city of Geneva.

about forty-five minutes or an hour to Geneva and went to the sheriff's office. His automobile was searched. He didn't have his trunk key on him at the time. He had left it the night before at his aunt's house. He was taken to his aunt's house where he procured the key with which the trunk was opened.

Explaining the money found in the trunk of his automobile, defendant testified that when he came to Geneva from Miami, he had about $600.00 and had won about $120.00 or $130.00 in two dice games; he put the small bills in a sack or sacks in the trunk of the car and the large bills in a painting kit in the trunk of the car, which was referred to by Captain Masters in his testimony, but apparently the kit was not searched. Defendant said he also had a cigarette lighter in the trunk of his car but that the lighter introduced in evidence was not his lighter, because his lighter was newer and had recently been bought by him. He said also that he had bought some pennies to give to his child.

The testimony of a large number of other witnesses for the defense corroborated defendant's testimony as to the time spent with Jacqueline commencing about 10:30 the night of the robbery and his testimony as to his winnings in the dice games as well as some other parts of his testimony.

Appellant advances nine "PROPOSITIONS OF LAW" in support of his argument for a reversal. The first two relate to a confrontation or lineup at the Scooter Store the morning after the robbery. The next two question the legality of the search of the defendant's automobile and urge that the court should have suppressed and not admitted evidence of the results of the search. The next three question the sufficiency of the evidence to support a conviction. The next charges that it was error to admit into evidence the pistol owned by defendant. The last proposition "CHARG-ES ERROR IN THE REFUSAL TO GIVE A PARTICULAR CHARGE REQUESTED BY DEFENDANT." We consider the contentions of appellant in the order stated.

Well before the trial commenced, defendant sought to prevent the admission in evidence of the identification of the robbers by the victim, and testimony relative to the contents of the trunk of defendant's automobile, by motions to suppress, which motions were heard and overruled by the court.

■ In support of his position relative to evidence of the victim identifying the robbers, appellant cites *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149; *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. Appellant argues that he was entitled to counsel at the time that he and his codefendants went to the Scooter Store on the morning after the robbery and were there identified by the victim in what is referred to by appellant as a lineup. The evidence shows that they with two others were viewed by the victim. As to appellant, there is no evidence of any coercion of him or of any involuntary conduct on his part. Even though denied by him, the evidence is strong that he was fully advised of his right to counsel, that counsel would be supplied him if he did not have counsel, and that he did not have to say anything or do anything. The cases cited by appellant, constituting the *Wade-Gilbert-Stovall* trial of June 12, 1967, are inapposite. In *Wade* and in *Gilbert,* an indictment had been returned. *Stovall* involved a show-up, or confrontation between a witness and one possible or potential defendant, not a true lineup between a ʾitness and two or more persons. As to ʾ ʾde and *Gilbert* we held in *Ratcliff v. State,* 49 Ala.App. 77, 268 So.2d 858, cert.

denied 289 Ala. 750, 268 So.2d 859 through Judge, now Justice Almon:

"Appellant's sole contention on appeal was that he was not accorded the right to counsel at the time of the line-up as required by *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. Since this case was submitted, the United States Supreme Court has on June 7, 1972, rendered a decision in *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L. Ed.2d 411, which is dispositive of the issues in this cause."

We have followed *Kirby v. Illinois* in several cases and as recently as in the companion case of *Wilson v. State*, 57 Ala. App. 125, 326 So.2d 316.

The only evidence of identification by the victim of the robbery shown by the State was the in-court identification. No effort was made by the State to show a lineup identification. Defendant on cross-examination of the victim injected into the evidence the identification made by her of appellant's codefendants. In *Wilson, supra*, we rejected appellant's claim that the lineup "was so unnecessarily suggestive and conducive of irreparable mistaken identification that he was denied due process of law" (*Stovall v. Denno, supra*, 388 U.S. at 302, 87 S.Ct. 1967) and followed views expressed and conclusions reached in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and *Thomas v. State*, 50 Ala.App. 227, 278 So.2d 230. Opposed to appellant's contention are also *Smith v. State*, 55 Ala.App. 26, 312 So.2d 598 (1975); *Clark v. State*, 54 Ala.App. 217, 307 So.2d 28 (1975); *Sims v. State*, 51 Ala.App. 183, 283 So.2d 635 and other cases.

Participating in the lineup were the three defendants and two young men of the same color, one of whom was approximately the same age as appellant and the other approximately the same age as the codefendants. There is some conflict in the evidence presented on the motions to suppress, but on the whole we find little basis for any contention that there was any effort on the part of the officers to lead or mislead the victim in her efforts to identify the persons who robbed her.

What we have held in *Wilson v. State, supra*, should apply with greater force in this case. The victim did not identify appellant as one of the robbers. She did identify him as one who was in the store before the robbery occurred. This was admitted by appellant when he took the stand. The only difference in the appellant and the victim as to this fact was that according to appellant's estimate of time he was there and left immediately before the the robbery occurred but the victim said he was there und left immediately before the robbers entered the store. To be added to the "totality of the circumstances" to be considered is the obvious acumen of appellant. He was extraordinarily wise in the ways of the world, by no means a bumpkin. His ability to live luxuriously by his wits bespeaks his brilliance but is no testimonial to his integrity.

■ As to appellant's insistence that the evidence is insufficient to support the verdict or too weak to justify the trial court's overruling of defendant's motion for a new trial, we must say that it is far from conclusive and not one of the strongest cases to be found. Even so, we are convinced that the evidence was sufficient to sustain the verdict of the jury and that it was within the province of the trial court to uphold it against an attack to the effect that it was against the weight of the evidence.

The alibi evidence was not strong, in our opinion. This by reason chiefly of the fact that the time testified to by defendant's witnesses was so close to that testified to by the victim of the robbery as to fail to present an obstacle to the reconciliation of the two views, consistent with defendant's

presence at the place of the robbery immediately before the robbers entered the store. Furthermore, the presence of the kind of money in the truck of defendant's automobile in all the circumstances is strong evidence of his connection with the robbery as an aider or abettor. His explanation is interesting but not convincing. There is no contention that the robbers put the loot or a part of it in the trunk of his automobile. He was the only one that had the key to it. In the trunk was found money remarkably similar to some of the money taken from the victim, an identical roll of pennies, according to her. Also in the trunk was the cigarette lighter she said was taken from her, which defendant-appellant acknowledged was not his and which the victim said she could positively identify by reason of some of the flints that were in it. There was no error in the overruling of defendant's motion to exclude the testimony, in refusing his requests for the general charge in his favor or in the action of the trial court in overruling his motion for a new trial.

■ Appellant makes a strong case to the effect that the search warrant did not measure up to all of the requirements of a valid search warrant, but we see no necessity for ruling upon this particular question. The search of the automobile, including the trunk of the automobile, according to all the evidence in the case, was without any objection whatever upon the part of defendant. He was apparently active voluntarily, in all of his conduct, after learning that the officers had brought the codefendants to the City Hall. This is some evidence, we think, in favor of him on the question of his guilt, but it is evidence against him on the question of the validity of the search. In addition, after the officers went to the store where the robbery took place at Hartford and returned to Geneva, they unquestionably had probable cause for believing defendant *particeps criminis* and that there were some fruits of the crime in the automobile.

They had learned that appellant was in the store a few moments before the robbery took place; that the robbers had been his companions that day and for a week before; that he was the oldest of the three; that he was well acquainted with the people and places of Geneva County. They had been reliably informed that an automobile very much like defendant's was at the store at the time of the robbery, that the robbers left the store in it and that it was not driven by either of them. At that time the only information they had and information upon which they had the right to rely pointed almost conclusively to him as the driver of the automobile. There was probable cause for search of the automobile while it was in front of the City Hall. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 25 L. Ed.2d 419 (1970); *United States v. Boyd*, 436 F.2d 1203 (5th Cir. 1971); *Suggs v. State*, 49 Ala.App. 118, 269 So.2d 136. The fact that a search warrant was obtained, even if defective, does not militate against the principle that with probable cause for the search the search was not unconstitutional or illegal. *Bassett v. State*, 290 Ala. 259, 275 So.2d 720, cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86.

■ Appellant urges that there was error in admitting the pistol of appellant into evidence, saying that it was "completely irrelevant and immaterial, as the state never did connect it up with the robbery." "Any indications of a consciousness of guilt by a person suspected of or charged with crime, or who may after such indication be suspected or charged, are admissible evidence against him." *McAdory v. State*, 62 Ala. 154; *Seals v. State*, 271 Ala. 142, 122 So.2d 513; *Cobb v. State*, 50 Ala. App. 707, 282 So.2d 327. Two pistols were used by friends of appellant in the commission of the robbery. If his possession of a pistol the next day was the only evidence against him of any connection with the robbery, evidence thereof would have had

no standing. It was a circumstance, however, to be considered by the jury, together with all other circumstances, on the question of his guilt. If his explanation of his possession of it and of his reasons for attempting to conceal it from others was true, testimony as to the pistol would not have been relevant, but the jury did not have to believe his explanation and evidently did not do so. The pistol was properly admitted in evidence.

 Finally, appellant asserts that the court was in error in refusing the following charge requested in writing by defendant:

"DEFENDANT 27.

"I charge you that if the evidence of the State consists in the statements of witnesses, the truth of which the jury have reasonable doubt, you cannot convict on such evidence, although you may not believe the testimony of the Defendant's witnesses."

As stated by appellant, the predecessor of this Court has held that it was reversible error for the trial court to refuse such a requested charge. *Brown v. State*, 20 Ala. App. 39, 100 So. 616. The ruling ran into rough sailing. The correctness of the charge was seriously questioned. The question of the reversibility of the judgment of the trial court by reason of the refusal of such charge was resolved adversely to appellant in *Crews v. State,* 218 Ala. 145, 117 So. 801 [answer conformed to 22 Ala.App. 564, 117 So. 801] (1928), wherein it was said:

". . . We are of the opinion that the charge in question is, upon its face, subject to objection, and may be properly refused. We think, also, it could be given without error."

We find no error in the record prejudicial to appellant and that the judgment of the trial court should be affirmed.

The foregoing opinion was prepared by Honorable LEIGH M. CLARK, Super-numerary Circuit Judge, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby

Affirmed.

All the Judges concur.