Thomas Cummings, alias Nieko Cummings, was indicted for the second degree burglary of Voss Grocery, situated at 700 Waterloo Road, Russellville, Alabama, the property of Lee Voss. The jury found the appellant "guilty as charged in the indictment," and the trial court entered judgment, setting sentence at five years imprisonment. The appellant's motion for a new trial, challenging the weight and sufficiency of the evidence, and averring that such was "contrary to law," was overruled following a hearing thereon.
Lee Voss testified that on March 29, 1977, he owned Voss Grocery Store, located at 700 Waterloo Road in Russellville, Alabama. Mr. Voss indicated that he closed his business at 6:00 p.m. on Tuesday, March 29, 1977, and locked the door and windows. He related that the windows were on either side of the front door and they had multiple glass panes in them. None of these were broken when he left the store. From the record (R. p. 30):
 "Q. Mr. Voss, how did you come to know that there had been a break-in there at the store? *Page 780 
 "A. The next morning when I opened at 6:30 in the morning and entered the store, I noticed my cigarette rack was empty and I glanced at the windows and found one of the panes had been removed from the frame."
Mr. Voss stated that the cigarette rack is against the front wall with the right edge near the window. He stated that the glass had been completely removed from one of the panes, including the putty, and pieces of glass were lying on the ground outside with a few small particles inside the store.
Mr. Voss indicated that he maintained an inventory of items within the store, and that missing was a personal radio of the value of about $30.00, and also the following (R. p. 31):
 "A. There was, also, approximately 50 cartons of cigarettes missing, various pieces of jewelry, some hearts and star necklaces, a gold ball necklace, a number of lighters were gone. Every lighter we had in the place was gone. We found food stuff gone and as best we could estimate, there was about a stick and a half of baloney and various packages of ham and other lunch meats, cheese, potato chips, bread, some cakes and candy, gum, soft drinks, all were missing.
 "Q. What would be the total and combined value of all those items?
"A. Approximately, $490.00.
 "Q. Mr. Voss, were any of these items marked by you? Were any kind of marks on them that indicated Voss Grocery?
 "A. No sir, nothing other than, say we had recovered any meat I possibly could have identified the marking on the meat packages.
 "Q. As far as cigarettes, for instance, were there any particular distinguishing marks on the cigarettes?
"A. No sir."
Mr. Voss was then shown State's Exhibit No. 1, a radio, which, he stated, had belonged to him for approximately eight years and was inside the store when he closed about 6:00 p.m. on March 29, 1977, and was missing the following morning when he unlocked the store at 6:30 a.m. He stated the break-in occurred on Tuesday night, and that on Friday, April 1, 1977, one Ray Smith brought the radio in question to his store. While Voss talked with Smith, Captain Burns Saint, a police investigator, drove up and Voss turned the radio over to him.
Mr. Voss indicated he knew the appellant, Thomas "Nieko" Cummings, and that Cummings' sister, Melissa, lived on College Avenue, about one block from the store. Voss indicated that Cummings was "a fairly regular customer of his store."
On cross-examination, Voss indicated that he did not have an exact inventory of the missing items, but had made his "best estimate." He further stated that it was possible that Cummings may have handled merchandise inside the store as from time to time he made purchases. Voss indicated that the broken pane was approximately twelve inches long by about sixteen inches wide, that it was from a window which was about chest high, being four or five feet from the ground.
On redirect Mr. Voss indicated that the radio was the only missing item, which was subsequently recovered and returned to him.
Captain Burns Saint of the Russellville Police Department stated that he was working as an investigator on March 29-30, 1977. He indicated that he received a call shortly after 7:00 on the morning of March 30, 1977, and drove to Voss' store. In examining the premises, he noticed there were two windows on each side of the front door, and that on the north side of the door, one of the window panes was broken out. He indicated there was glass on the ground and a little inside the store, and that one piece of glass was still in the window. Captain Saint indicated that on Friday, April 1, 1977, he stopped by the store and Mr. Voss handed him a black radio which he identified as State's Exhibit No. 1, that this radio had been in his possession since April 1, 1977, until the date of trial. Officer Saint also indicated that he received a list of missing items from Mr. Voss. *Page 781 
Officer Saint indicated that during his investigation he talked with the appellant, Thomas "Nieko" Cummings, and that Cummings' sister's home (Melissa Green) was located on College Avenue, one block directly behind Voss Grocery.
Officer Saint also stated that he and Police Officer Terrell Potter lifted several "latent fingerprints" from the piece of glass still in the window and also from some of the glass on the ground directly beneath the window.
Ray Smith testified that he lived at East side Apartments, and that he was nineteen years of age in March, 1977. Smith testified that the first time he saw the radio in question it was on an automobile seat between two young males, Thomas "Nieko" Cummings and Ricky Pounders. Smith indicated he did not know which of them claimed the radio, but they offered to sell it to him for $2.00, and that he put $2.00 on the automobile seat, that Cummings picked it up, and he then drove around in his automobile, a 1966 Ford, with Cummings and Pounders. This occurred "around the end of March, 1977." Smith indicated that neither Cummings or Pounders stated where the radio came from. He stated that there was no discussion concerning a break-in at Voss Grocery in his presence.
Smith related that when he picked up Cummings and Pounders they drove around a while and he then dropped them about one block from the grammar school, which was in the vicinity of College Avenue. Smith indicated that he came back by a short time later and the two men were walking down the street, that they then got in the car with him. He stated that Cummings and Pounders told him they were "going to let Jimmy Washington have it until that weekend and they were going to pick it back up." At this time Smith "laid $2.00 on the seat and told them he would take it" (R. p. 43).
Smith also stated that "Well, Buckshot and me talked about it and then he told me to take it to Mr. Voss" (R. p. 49). Smith stated that he learned of the break-in at Voss Grocery "about a day later" and took the radio to Mr. Voss. Smith stated that Captain Saint and Mr. Potter, a district attorney investigator for Franklin County, were at Voss Grocery on April 1, 1977, when he turned the radio over to Mr. Voss.
Terrell Potter stated that he was an investigator for the Franklin County District Attorney on March 29-30, 1977, and that he investigated a break-in at Voss Grocery. In the presence of Captain Burns Saint, he examined a window which was broken and noticed a small piece of glass in the corner of the window, and the remainder of the glass on the ground outside the window. He also found a small piece of glass inside the store. Potter lifted latent fingerprints from the piece of glass still in the window frame and from the glass on the ground outside.
In response to inquiry, Potter indicated that he had lifted probably 200 or 300 latent fingerprints, that he had taken a course and had been certified by the State of Alabama as a competent fingerprint examiner. Potter then stated that he made "two lifts" from the piece of pane in the frame and got "some ridge detail." He also lifted some prints from a piece of glass on the ground outside the window. Mr. Potter then identified three pieces of plastic, which were jointly identified as State's Exhibit No. 2. They contained the latent fingerprints which he had lifted from the glass. Potter stated that these items from Exhibit No. 2 remained in his custody until April 7, 1977, when they were turned over by him to Lieutenant Denver T. Tidwell of the Alabama Bureau of Investigation.
Potter also stated that he recognized State's Exhibits Nos. 3, 4, and 5 as being "known prints" which he also turned over to Lieutenant Tidwell on April 7, 1977.
Captain Burns Saint was then recalled and stated that he had Franklin County Jailer Mike Robinson make some prints of the appellant which were turned over by him to Investigator Terrell Potter.
Franklin County Sheriff's Jailer Mike Robinson stated that on April 7, 1977, as part of his duties, he made fingerprints of *Page 782 
the appellant, Thomas "Nieko" Cummings. He then identified State's Exhibits Nos. 3, 4, and 5 as being the prints which he made of Cummings on this date. On this same date, these prints, which were placed on the fingerprint cards, were turned over by him to Captain Burns Saint, who in his presence turned them over to Investigator Denver T. Tidwell.
Denver T. Tidwell stated he was an investigator for the Alabama Bureau of Investigation in April, 1977, and he had been such for six years. On April 7, 1977, he "received three latent fingerprint lifts and three fingerprint cards" from Captain Burns Saint. He identified his mark on State's Exhibits Nos. 2 through 5. Mr. Tidwell then delivered these items to Mr. John Kilburn at the State Toxicology Laboratory in Florence.
State Toxicologist John Kilburn testified that he received State's Exhibits Nos. 2 through 5 from Investigator Denver T. Tidwell and placed his identification number, 144179FL, on these items. He stated that these exhibits remained in his care and custody except for being sent by certified mail to the Identification Division Office in Montgomery, and that they were returned by the Montgomery Laboratory by certified mail to him on October 1, 1977, that the items had remained in his care until being presented in court.
Mrs. Mary Etta Prevost testified that she was a latent print examiner for the Department of Public Safety in the Identification Unit in Montgomery, Alabama. She stated that she had made an examination of State's Exhibits Nos. 2, 3, 4, and 5, having received these from Mr. John Kilburn on September 19, 1977. Mrs. Prevost testified that she had completed a training course with the FBI in Washington and worked as fingerprint examiner under the supervision of Mr. R.G. Whitman, FBI Latent Fingerprint Supervisor, for many years. She stated that she had been called upon to examine several hundred thousand fingerprints for comparison during her service with the FBI and later with the Alabama Department of Public Safety. From the record (R. p. 75):
 "I'll ask you if you compared the Latent Fingerprints on State's Exhibit 2 with the fingerprints on the card marked State's Exhibit 3?
"A. Yes sir, I did.
 "Q. Now what was the result of your comparison, Mrs. Prevost?
 "A. Well, I have marked these Latent numbers on the Exhibit 2 and I found that Latent Number 1 —
 "Q. Pardon me, you said you had marked them, so you have indicated Latent Number 1?
 "A. Yes, it is identical with the right ring finger impression on the fingerprint card bearing the name of Thomas Earl Cummings.
 "Q. Using State's Exhibit 3, which one would that correspond with?
 "A. Right ring finger, this one here. Latent Number 2 is identical with the right middle finger impression.
"Q. Which one would that be?
"A. That one right there.
"Q. And what about that one marked Latent Number 3?
"A. That is identical with the left index finger.
"Q. Which one would that be?
"A. This one."
Mrs. Prevost also stated that she had made some enlargements from this fingerprint identification, and she then identified the enlargements, which were marked as State's Exhibit 6. Mrs. Prevost then indicated that she found "twenty-five points of comparison, which were more than ample for comparison purposes." Mrs. Prevost then stated that "the prints lifted from the glass and those on the fingerprint cards were identical."
The appellant then moved to exclude the State's evidence for failing to make out a prima facie case, which was overruled.
Mrs. Melissa Green stated that she was the sister of Thomas "Nieko" Cummings and lived with her children at 702 College Avenue in Russellville on March 29-30, 1977. She stated that her brother, "Nieko" *Page 783 
Cummings, came in about 5:30 on the afternoon of March 29, and he left about 6:30 with Ricky Pounders, that they told her they were going to the "pool room." She stated that she saw her brother come in between 9:00 and 10:00 o'clock that night, that he went to bed shortly thereafter, and that he did not leave the house after 10:00 on the night of March 29, 1977.
Ricky Lee Pounders testified that he was sixteen years of age and lived with his mother at Route 6, Box 320, in Russellville, on March 29, 1977. He stated that he and Thomas "Nieko" Cummings were good friends, and that on Tuesday, March 29, 1977, he went by "Nieko's" home around 4:00 that afternoon, that Cummings lived with his sister, Mrs. Melissa Green, on College Avenue. Pounders stated that he and "Nieko" went to the pool room and to the ball park, then returned to "Nieko's" home about 10:00 that evening. Pounders denied going to Voss Grocery Store, or knowing anything about the break-in, which occurred at the store on the night of March 29, 1977. Pounders denied knowing anything about a radio that was sold to Ray Smith the latter part of March, 1977, and which was marked as State's Exhibit 1.
On cross-examination, Pounders stated that during March and early April he and Cummings were together most evenings, and they frequently went to the pool room to play pool. Pounders indicated that Captain Burns "Buckshot" Saint told him about the break-in when he came by to talk with him, but he denied ever having been with Cummings and Ray Smith together. Pounders further stated that Cummings was working at the Barclift Furniture Company during this time.
The State then recalled Terrell Potter and Burns Saint, both of whom testified that Ricky Pounders general reputation in the community was "bad" and that his reputation for truthfulness was "bad."
 I
The appellant contends the State failed to prove a prima facie case of burglary, which established the appellant's guilt.
Identity may be established by either direct or circumstantial evidence. Dentman v. State, 267 Ala. 123,99 So.2d 50.
In the case at bar, expert testimony from Mrs. Prevost clearly established that prints on the window glass lifted by Mr. Terrell Potter from the window frame at Voss Grocery Store and additional lifts made from glass found on the ground outside the window on the morning of March 30, 1977, were identical to the fingerprints of appellant made at the Russellville Jail following his arrest on April 7, 1977. This evidence was clearly a circumstance to be considered by the jury, together with all other circumstances on the question of the appellant's guilt. Little v. State, (Ala.Cr.App.)356 So.2d 379, 1978; and Scruggs v. State (Ala.Cr.App.), 6 Div. 560, March 21, 1978.
Further, the radio, which was positively identified by Mr. Voss as being missing from his grocery store following the break-in on March 29, 1977, and returned to him by Ray Smith on Friday, April 1, 1977, was an additional circumstance for the consideration of the jury in establishing the appellant's guilt. Smith testified that he purchased this radio for $2.00 from Cummings and Ricky Pounders. This testimony was properly admitted by the trial court for consideration by the jury, together with all other circumstances on the question of appellant's guilt. See Dardy v. State, Ala.Cr. App.,347 So.2d 584; Thomas v. State, 57 Ala. App. 320, 328 So.2d 321; Hall v.State, 57 Ala. App. 132, 326 So.2d 660; and Vaughn v. State,57 Ala. App. 134, 326 So.2d 662.
 II
Appellant contends that error occurred during the cross-examination of Ray Smith, wherein counsel sought to impeach the witness. The colloquy wherein this occurred is on R. p. 52:
 "Q. O.K., you say you bought this radio, is that correct?
"A. Yes. *Page 784 
 "Q. Did you have any idea at the time you bought it that this radio was allegedly stolen?
"A. No.
"Q. Do you know buying stolen property is a crime?
"A. Yes.
 "Q. And if in fact this radio was stolen and you bought it you then committed a crime, is that correct?
 "MR. JOLLY: Objection, Your Honor, this is past the scope of Cross Examination.
"THE COURT: I sustain.
 "Q. And I believe your testimony was, you had no conversation with Nieko Cummings relating to a break-in at Voss Grocery, is that correct?
 "A. Not at the time. Well, we was riding around, we was just riding and listening to music and I let them out and later picked them back up and we rode up and down through town some."
As may be seen in examining the above colloquy, Smith admitted that he bought the radio, but at the time did not know that the radio was allegedly stolen. He also testified that he knew purchasing stolen property was a crime. The next question, to which the State's objection was sustained, was clearly beyond the scope of cross-examination and was moreover repetitious of matters already admitted by the witness Smith. Clearly, therefore, no error occurred. We are therefore of the opinion that the appellant's right of cross-examination was not here unduly restricted. See § 12-21-137, Code of Alabama 1975;Wright v. State, 49 Ala. App. 539, 274 So.2d 95; Browder v.State, 54 Ala. App. 369, 308 So.2d 729, cert. denied 293 Ala. 746, 308 So.2d 735.
We have carefully examined this record and find no error therein. The judgment is therefore
AFFIRMED.
All the Judges concur. *Page 1185