Wayne Terrell Little was charged by indictment with the robbery of A.G. Williams by taking some $14.00 in currency from his person by "violence to his person or by putting him in fear, etc." The two-count indictment also contained a charge of "assault with intent" against the said A.G. Williams. This count was dismissed on the motion of the State at the time of submission of this cause to the jury.
The jury returned a verdict of guilty of "robbery as charged" and fixed punishment at "twenty years and one day" in the penitentiary. The trial court entered judgment accordingly. The appellant's motion for a new trial, challenging the weight and sufficiency of the evidence, was overruled following a hearing thereon.
A.G. Williams related that he was the owner and operator of Williams Pharmacy located on University Avenue in Tuscaloosa, Alabama, on March 19, 1977. Williams indicated that he had been in business at this location for some twenty-eight years and his wife worked in the store part time. Mr. Williams indicated that on Saturday, March 19, 1977, his wife worked that morning but left shortly after the noon hour. Williams indicated that he was on duty near the prescription department shortly before 5:00 o'clock that afternoon when a young woman came into the store and spoke to him, then said she wanted some Pepto Bismol. Mr. Williams stated that he waited on her and then noticed a black man walking around in the store who wanted some Ex-Lax. Mr. Williams said he noticed the woman's hands were very rough and scarred looking in appearance.
Mr. Williams stated about this time a second young black male came into the store and began looking around. He stated the man was wearing a nice looking light *Page 380 
tan matching outfit and he was light skinned. This individual first purchased some Bromo Seltzer then made an inquiry about Ex-Lax. He stated that as he was attempting to wait on him, he pointed a pistol at him and "he let me know that this was a holdup." Williams stated he ducked behind the counter and started to run for the front door but the robber pushed the whole display off the top of the counter (R. p. 14), caught Williams, and made him go back and open the cash register at pistol point. The robber then took the cash, which amounted to some $14.00, and began thumbing through some checks. The robber then asked if there was any more money in the register, and upon being told there was not, he began beating Williams across the face and head, causing him to fall to his knees. Williams indicated that he was struck at least "ten or twelve times with the butt end of the pistol on the forehead and head" (R. p. 18). He stated that the man ran out of the store and he watched him jump into a 1967 or 1968 two-toned Oldsmobile Cutlass and drive away.
Williams indicated that he was bleeding profusely (R. p. 19) but he ran out of the store and called for help. He testified that he called for Dr. Jackson and some police officers and within fifteen to twenty minutes he was taken to the Tuscaloosa Hospital where five stitches were taken on his forehead and three on the back of his head. Williams then identified a number of photographs of the interior and front of Williams Pharmacy. From the record (R. p. 27):
 "Q. Mr. Williams, did I understand you to say in State's Exhibit No. 6, which I believe you testified to be a picture of the cash register, that you were behind on the 19th of March?
"A. Uh-huh (yes).
 "Q. And now, would this view, would this picture be taken looking toward the front door?
"A. Toward the front door.
 "Q. And if I might hold this picture up right here for the jury, would you point to the box — the particular portion of the cash register where the checks were lifted by Wayne Terrell Little?
"A. Right here.
 "Q. And were there — I believe you testified there were no twenty dollar bills?
"A. No, no twenty dollar bills there."
Williams related that the robber was thumbing through the checks just before he began beating him over the head with the butt end of his pistol. He further stated that the robber "got in the Oldsmobile Cutlass with, I believe, a woman who had bought the Pepto Bismol," and they drove away (R. p. 41). Williams related that later in the Spring of 1977 he was called to the Sheriff's Office to view a lineup of four or five young black males. He was unable to make a positive identification but said he thought the individual in position No. 1 was the robber. Mr. Williams indicated in response to questioning, "I think that is him" (R. p. 31). Williams indicated he was present in the store when Tuscaloosa police officers came in and began making photographs and picking up the checks from the floor.
On cross-examination Williams stated "he was 100% positive that the man who robbed him at the cash register thumbed through the checks" then threw them to the floor (R. p. 40).
Jerry Junkin testified he was the owner and operator of a Gulf Service Station located at 2002 University Boulevard in Tuscaloosa, Alabama, on March 19, 1977. Junkin related that his station is directly across 20th Avenue from Williams Pharmacy. Junkin indicated on Saturday, March 19, 1977, about 5:00 o'clock in the afternoon, he heard Williams running out of the drug store and calling for help. He said he saw some individuals get into a 1967 or 1968 two-toned Oldsmobile Cutlass. As this car drove away, Junkin jumped in his truck and pursued the Oldsmobile. He stated the car went down 20th Avenue, made a turn and headed for River Road, which paralleled the Warrior River. Junkin then indicated he lost the automobile in traffic and was unable to obtain the tag number (R. pp. 46-49). *Page 381 
Mrs. A.G. (Martha) Williams testified that on March 19, 1977, she came to work at Williams Pharmacy about 9:00 that morning. She stated she worked until 1:00 or 2:00 o'clock that afternoon before leaving to go home. She stated that on this date, about mid-morning, one Mrs. Leila Mae Garrett came into the store and made a purchase, then cashed a check for $2.00, which she endorsed and left with Mrs. Williams. Mrs. Williams stated that Mrs. Garrett had been a "customer of ours for quite a long time," and that she definitely remembered cashing the check for her and placing it in the cash register at Williams Pharmacy.
Harold Jones, Tuscaloosa Police Department Investigator, stated he received a call to go to Williams Pharmacy on Saturday, March 19, 1977, shortly after 5:00 o'clock. Upon reaching the store he saw Mr. Williams with a handkerchief to his head and saw blood running down his face. Jones stated that Williams had a wound on his left forehead and there was a small hole in his skull which was bleeding quite a bit. Jones stated he noticed blood near the cash register and that Williams showed him where he had been struck over the head with a pistol. He stated he saw two checks lying on the floor, that he picked up one of the checks, endorsed by Mrs. Leila Garrett, placed it in a plastic container and delivered it to Investigator Everett of the Tuscaloosa Police Department, on March 21, 1977. Jones also picked up a bag which contained Bromo-Seltzer and Ex-Lax. He placed these in a plastic bag which he turned over to Investigator Everett on Monday, March 21, 1977.
Mike Everett, Tuscaloosa Police Investigator, stated that he assisted in the investigation of the Williams Pharmacy robbery and that on March 21, 1977, he received two checks from Investigator Jones which he sent by registered mail to Ron Smith, Latent Fingerprint Examiner with the Alabama Bureau of Investigation in Montgomery. He stated that he also sent the package containing the Bromo-Seltzer and Ex-Lax, and subsequently sent a suspect fingerprint card to Ron Smith for comparison purposes. Later he received a telephone call from Ron Smith concerning the results of his examination and Smith then returned State's Exhibit No. 11, the Garrett check, to him and it had been in his care, custody and control since that time.
Everett indicated that on March 31, 1977, he obtained a warrant for the arrest of the appellant, Wayne Terrell Little, and he attempted to locate him in Tuscaloosa and within the State of Alabama but was unsuccessful. Everett stated he first saw the appellant on May 25, 1977, at 12:24 p.m. at the Tuscaloosa County Jail. At this time he read the appellant a"Miranda rights form," and without making any threats, intimidation, coercion, or offering any hope of reward or other inducement on his part or Investigator Cooper's, who was with him, he questioned Little. Little denied committing the robbery of Williams Pharmacy on March 19, 1977, but did indicate he had been there one time to get a prescription filled. Little was asked by Investigator Everett if he had ever borrowed an Oldsmobile automobile belonging to Dudley Molton. Little responded that he had borrowed this car on occasion, but that he did not borrow it on March 19, 1977, and that while he knew one Stella Taylor, they did not go to Williams Pharmacy in Molton's car on March 19, 1977.
Everett also asked Little if he knew Mrs. Leila Mae Garrett, and he stated that he did not. Williams was unable to explain why his fingerprints were found on the check Mrs. Garrett cashed and left at Williams Pharmacy and denied "robbing the store."
The Miranda Waiver form signed by Little was placed in evidence. The check to Mrs. Leila Mae Garrett was dated March 10, 1977, and made payable to her.
Everett related that he had been to the home of Dudley Molton and there found a 1967 Oldsmobile Cutlass. Upon knocking at the door and talking with Molton and his wife, he observed a bottle of Pepto Bismol sitting on the kitchen counter (R. p. 103). Everett related that Mr. Williams had been *Page 382 
unable to make a positive identification at police lineup of anyone, and that a photograph made of this lineup showed Little standing in position No. 4. This lineup took place on May 26, 1977.
Dudley Molton testified that he lived at Route 1, Box 88C, in Northport, Tuscaloosa County, with his wife and two sons. He was employed at B.F. Goodrich Rubber Plant and testified that he had known Wayne Terrell Little since elementary school years. Molton stated that he recalled Saturday, March 19, 1977, because on Wednesday prior to that time, Little came to him with his girl friend, Stella Taylor, and asked if they could stay with them several days, and that he allowed Little and Taylor to stay there. Molton stated that after breakfast that Saturday morning, he went to pick up some food for his family, and when he got back Wayne Little and Stella Taylor asked him if they could borrow his automobile. He stated that he let them have it. This was shortly after 10:00 o'clock a.m. on March 19, 1977. Molton also stated that Stella Taylor had several scars on her hands and they were noticeable. Molton then identified three photographs of his 1967 Oldsmobile Cutlass and stated that it was a two-toned car with a light blue bottom and a black top. Molton indicated that during the afternoon, after Little and Taylor did not come back, he went out on two occasions trying to find them but was not able to do so. When he returned the second time to his home, his wife told him that they had come back and left the car, but took off in a hurry. He noticed a "bottle of Pepto Bismol" sitting on the counter in the kitchen two days later. Molton stated that he was a friend of Little's and that Little had driven him to work several times on other occasions before Saturday, March 19. He stated that Wayne Little and Stella Taylor returned the car between 7:00 and 8:00 o'clock on the night of March 19, 1977, but he was not at home when they came back. He stated that he later looked in the automobile for a pistol or money and did not find any.
Jacqueline Molton testified that she was the wife of Wayne Molton and lived with him and their two sons in Northport, Alabama. Mrs. Molton stated that she had known Wayne Terrell Little since grammar school days and that he was going with a girl named Stella Taylor in March of 1977. She stated that Little and Taylor had gone to their home and had been staying with them since the Wednesday before Saturday, March 19, 1977. She stated that from time to time they had borrowed their 1967 Oldsmobile Cutlass.
Mrs. Molton stated that she awakened shortly before 11:00 on the morning of Saturday, March 19, 1977, and that neither Little nor Mrs. Taylor was there and she did not see them again there until after 6:00 that same evening. Shortly after 6:00 Wayne Little and Stella Taylor came in and returned the car, then began gathering up their personal clothing. She said they appeared to be in a hurry, that they went back to the bedroom, got their clothes, and left. She said she first saw a bottle of Pepto Bismol on the kitchen counter after they left. Mrs. Molton stated that Little and Taylor did not stay with them on Saturday night and she had not seen them since that time.
J.P. McFerrin stated that he was Assistant Jailer with the Tuscaloosa County Sheriff's Department and also made fingerprints of suspects. McFerrin identified Exhibit 18 as being the fingerprints of Wayne Terrell Little which he made at the Tuscaloosa Jail. McFerrin indicated that both he and Little signed Little's fingerprint card, which was admitted into evidence, and that he only made one such card.
Ron Smith testified he was employed by the Alabama Bureau of Investigation at Montgomery Headquarters. Smith related that he had formerly been with the Federal Bureau of Investigation for one year prior to being employed by the Alabama Bureau of Investigation in 1973 and that he had been trained in fingerprint investigation by Mr. R.G. Wittmus at the FBI Print School at Quantico, Virginia. Smith stated that his specialty was latent fingerprints which usually appear as a smudge on an object *Page 383 
caused by perspiration or any foreign substance when an object is touched. Smith testified that he had received State's Exhibit No. 11, a check made payable to Leila Mae Garrett, from Tuscaloosa Police Investigator Mike Everett. Smith stated he also received State's Exhibit 18, a fingerprint card, bearing the photograph and the signature of Wayne Terrell Little, and that these remained in his care and custody for comparison purposes until he returned them to Investigator Mike Everett.
Smith stated that he made a comparison of the fingerprints and found twenty-two points which he checked and determined matched the fingerprints of the appellant, Wayne Terrell Little, by comparison with Exhibit 18. He further stated that this was an ample basis for fingerprint comparison, that he had known of fingerprint comparisons having been made with as few as seven to nine points. Mr. Smith related that no two sets of human fingerprints are the same, but that the fingerprints on the card, State's Exhibit No. 11, were those of the appellant, Wayne Terrell Little. Exhibits Nos. 11 and 18 were admitted into evidence.
At this time the State dismissed the assault with intent charge.
The appellant did not testify or present any evidence at trial. Both sides stated they were "satisfied" with the trial court's oral charge.
 I
Appellant contends that the identification by Mr. Williams of Little in court should be suppressed and stricken because he was unable to make a positive identification, simply stating, "I think that is him" (R.pp. 31, 36), "but I am not positive" (R.p. 40).
In Carpenter v. State, 42 Ala. App. 618, 174 So.2d 336, we find the following:
 "The testimony of the victim of the alleged robbery which was offered to establish the identity of the appellant as one of the alleged robbers presented a jury question on that matter. Although this witness did not positively identify the appellant, did not observe appellant under ideal conditions, failed to identify him in a police line-up, and although there were minor discrepancies in his description of the alleged robber, these matters, in our opinion, went to the weight of the testimony and did not destroy its value for the purpose of establishing identity. See 23 C.J.S., Criminal Law, §§ 864, 920."
See Hall v. State, Ala.Cr.App., 353 So.2d 51 (1977); Hopkinsv. State, 57 Ala. App. 78, 326 So.2d 144; and Lomax v. State,355 So.2d 755, 6 Div. 397, February 15, 1978 (Ala.Cr.App.).
We are of the opinion that the trial court properly allowed Mr. Williams' statement to be submitted to the trial jury under the foregoing authorities.
 II
Because this is a circumstantial evidence case, the appellant earnestly contends certain questions were asked of the various State witnesses which called for answers or suggestions as to the evidence, and the result of these constituted error.
We do not agree.
The fingerprints of the appellant were definitely established as being upon the check cashed by Mrs. Garrett on the morning of March 19, 1977, at Williams Pharmacy by Mrs. Williams. The check itself is dated March 10, 1977, but Investigator Jones picked up the check from the floor of the store in the presence of Mr. Williams and then delivered it to Investigator Everett on Monday, March 21, 1977, where it remained except for being sent to Montgomery for comparison by Mr. Ron Smith. A proper chain was established under the evidence of the custody of the check in question, therefore the trial court properly admitted this in evidence. See Dardy v. State, Ala.Cr.App.,347 So.2d 584 (1977).
Identity may be established by either direct or circumstantial evidence. Dentman v. State, 267 Ala. 123,99 So.2d 50.
The fingerprints of the appellant on the check found on the floor of the pharmacy *Page 384 
were circumstances to be considered by the jury together with all other circumstances on the question of his guilt. Thomas v.State, 57 Ala. App. 320, 328 So.2d 321; Hall v. State,57 Ala. App. 132, 326 So.2d 660; Vaughn v. State, 57 Ala. App. 134,326 So.2d 662.
 III
The appellant asserts that the trial court erred in denying his request for the affirmative charge and in overruling his motion for a new trial which challenged the weight and sufficiency of the evidence, stating that the State failed to prove a prima facie case of robbery.
This Court, per Harwood, J., in Tunstill v. State,33 Ala. App. 460, 34 So.2d 857, cert. denied 250 Ala. 421,34 So.2d 859, observed:
 ". . . Thomas v. State, 91 Ala. 34, 9 So. 81, 82, contains an excellent discussion by Justice McClellan of the offense of robbery. Therein he defines robbery to be `a felonious taking of goods from the person of another, or in his presence, against his will, by violence, or putting him in fear. And this violence must precede or accompany the stealing.' In Hardis v. State, 28 Ala. App. 524, 189 So. 216, 217, in discussing the offense of robbery Judge Samford wrote: `As defined by our decisions, robbery is an offense against both person and property, and is briefly defined as the felonious taking of money or goods of value from the person of another, or in his presence, by violence or by putting him in fear. Parks v. State, 21 Ala. App. 177, 106 So. 218.'"
Not only did the State properly establish the chain of custody of the check containing the appellant's fingerprints found on the floor immediately following the robbery, but also two childhood acquaintances testified that the appellant borrowed their automobile and, accompanied by his girl friend, Stella Taylor, was gone from between 10:30 and 11:00 o'clock on the morning of Saturday, March 19, 1977, until shortly after 6:00 that evening when the 1967 Oldsmobile Cutlass was returned to the Molton's residence by the appellant. A fresh bottle of Pepto Bismol was left on the kitchen counter, and Stella Taylor's hands were similar to those which Mr. Williams had observed when he sold a bottle of Pepto Bismol to a black female with scarred hands early that afternoon.
Both Mr. Williams and Mr. Junkin observed a two-toned 1967 or 1968 Oldsmobile Cutlass at the scene of the robbery, though they were unable to obtain the tag number or positively identify the occupants.
The issue thus presented by this record is whether or not the evidence is sufficient to sustain the verdict and judgment. After careful consideration, we are of the opinion that the trial court ruled correctly on appellant's motions and request for the affirmative charge. Williams v. State, 48 Ala. App. 737,267 So.2d 526; Zimmerman v. State, 49 Ala. App. 442,272 So.2d 914; Clay v. State, 52 Ala. App. 272, 291 So.2d 364.
After careful examination of this record, we find same to be free from error. The judgment is
AFFIRMED.
All the Judges concur.